**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| [UNDER SEAL]<br><br>Plaintiff,<br><br>v.<br><br>[UNDER SEAL],<br><br>Defendants. | **Civil Action No.:** 1:26-cv-1480-JMS-MJD<br><br>**FILED UNDER SEAL** |

FILED
JUL 15 2026
U.S. DISTRICT COURT
INDIANAPOLIS, INDIANA

**COVER SHEET FOR SEALED FILING**

**COMPLAINT**

Kathleen A. DeLaney (#18604-49)
DELANEY & DELANEY LLC
3646 Washington Blvd.
Indianapolis, IN 46205
Tel. 317.920.0400
Fax 317.920.0404
kathleen@delaneylaw.net

*Attorney for* [SEALED]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

United States of America *ex rel.* Crestline Analytics LLC,

Plaintiff and Plaintiff-Relator,

v.

Elmore Companies, Inc.; Adams & Westlake Ltd.; Ameriforce Media LLC; Bellwether Forest Products, LLC; Butterfield Foods, LLC; CardDawg, LLC f/k/a CardDawg Management, LLC; Cornerstone Information Systems, Inc.; Colorado Springs Baseball Club LLC d/b/a Rocky Mountain Vibes; Firmatek, LLC; Gant Travel, Ltd.; Legacy Fire Protection Services LLC; Shelby Equipment, Inc.; Solution Tree Inc.; Turner Mining Group, LLC; David G. Elmore Jr.; Lauren Elmore; David G. Elmore III; Matt Moldenhauer; Todd Taranto; Matias Orrego; Frank Violi; Keaton Turner; Randy Schneider; and John Does 1–20,

Defendants.

**Civil Action No.:** 1:26-cv-1480-JMS-MJD

**COMPLAINT**

***JURY TRIAL DEMANDED***

**FILED UNDER SEAL**

FILED
JUL 15 2026
U.S. DISTRICT COURT
INDIANAPOLIS, INDIANA

On behalf of the United States of America (the "United States" or "Government"), and pursuant to the False Claims Act, 31 U.S.C. § 3729, *et seq.* ("FCA"), Plaintiff-Relator, Crestline Analytics LLC ("Relator"), files this *qui tam* Complaint for treble damages and civil money penalties against Defendants, Elmore Companies, Inc. ("Elmore Companies"); Adams & Westlake Ltd. ("Adams & Westlake"); Ameriforce Media LLC ("Ameriforce"); Bellwether Forest Products, LLC ("Bellwether Forest"); Butterfield Foods, LLC ("Butterfield Foods"); Colorado Springs Baseball Club LLC d/b/a Rocky Mountain Vibes ("Rocky Mountain Vibes"); CardDawg, LLC f/k/a CardDawg Management, LLC ("CardDawg"); Cornerstone Information Systems, Inc. ("CIS"); Firmatek, LLC ("Firmatek"); Gant Travel, Ltd. ("Gant Travel"); Legacy

Fire Protection Services LLC ("LFPS"); Shelby Equipment, Inc. ("Shelby Equipment"); Solution Tree Inc. ("Solution Tree"); Turner Mining Group, LLC ("Turner Mining"); David G. Elmore Jr. ("DG Elmore"), Lauren Elmore; David G. Elmore III a/k/a Gant Elmore ("Gant Elmore"); Matt Moldenhauer; Todd Taranto; Matias Orrego; Frank Violi; Keaton Turner; Randy Schneider (collectively, "Defendants"); and John Does 1–20, and alleges as follows:

## INTRODUCTION

1. This action seeks to recover funds that were loaned to Defendants through the Government and U.S. Small Business Administration's ("SBA") Paycheck Protection Program ("PPP") and forgiven as a result of false applications.

2. At all pertinent times, Adams & Westlake, Ameriforce, Bellwether Forest, Butterfield Foods, CardDawg, CIS, Firmatek, Gant Travel, LFPS, Rocky Mountain Vibes, Shelby Equipment, Solution Tree, and Turner Mining ("Affiliated Defendants"), which were affiliated by common ownership and control, were owned and controlled by Defendant Elmore Companies and/or Defendants DG Elmore, Lauren Elmore, Gant Elmore, Matt Moldenhauer, Todd Taranto, Matias Orrego, Frank Violi, Keaton Turner, and Randy Schneider (collectively, "Individual Defendants").

3. As detailed below, each Affiliated Defendant received a First Draw PPP Loan[1] and Defendants Adams & Westlake, Ameriforce, Bellwether Forest, CIS, Firmatek, Gant Travel, LFPS, Rocky Mountain Vibes, Shelby Equipment, Solution Tree, and Turner Mining received

[1] First Draw PPP Loans are federally backed, forgivable loans provided by the SBA during the initial phase of the PPP to eligible small businesses, non-profits, and self-employed individuals. A First Draw PPP Loan was intended under the CARES Act to help businesses maintain payroll and cover certain operating expenses (such as rent, utilities and mortgage interest) during the COVID-19 pandemic.

Second Draw PPP Loans,[2] even though they did not qualify for such loans and only obtained those loans (and later avoided repayment of those loans) by making false representations to the United States.

4. Under the applicable affiliation rules, Affiliated Defendants did not qualify for the First Draw PPP Loans because, *inter alia*, combined they had more than 500 employees,[3] had a net worth in excess of $15 million, had net income in each of the two years preceding the First Draw PPP Loans in excess of $5 million, and did not otherwise qualify as "small business concerns" under Section 3 of the Small Business Act, 15 U.S.C. § 632. Further, taking into account their business activities and ability to access other sources of liquidity sufficient to support their ongoing operations in a manner that was not significantly detrimental to the businesses, the First Draw PPP Loans received by Affiliated Defendants were not necessary.

5. Defendants Adams & Westlake, Ameriforce, Bellwether Forest, CIS, Firmatek, Gant Travel, LFPS, Rocky Mountain Vibes, Shelby Equipment, Solution Tree, and Turner Mining received Second Draw PPP Loans that they did not qualify for because, combined, they had more than 300 employees. None of these entities were eligible to receive Second Draw PPP Loans.

6. In 2020, despite the fact that they were not eligible to receive First Draw PPP Loans, Affiliated Defendants submitted SBA applications for PPP loans in which they falsely

---

[2] Second Draw PPP Loans are federally backed, forgivable loans provided by the PPP issued to eligible borrowers that previously received and used a First Draw PPP Loan in order to continue covering payroll and certain operating expenses after experiencing an ongoing revenue decline due to the COVID-19 pandemic.

[3] As discussed in detail below, two Affiliated Defendants applied for First Draw PPP Loans using North American Industry Classification System ("NAICS") codes that have alternative size standards permitting borrowers to receive such loans with up to 750 employees. As described herein, Affiliated Defendants exceeded that standard as well.

and fraudulently stated and certified that they were eligible to participate in the PPP and receive such loans.

7. In 2021, despite the fact that they were not eligible to receive Second Draw PPP Loans, Defendants Adams & Westlake, Ameriforce, Bellwether Forest, CIS, Firmatek, Gant Travel, LFPS, Rocky Mountain Vibes, Shelby Equipment, Solution Tree, and Turner Mining submitted SBA applications for PPP loans in which they falsely and fraudulently stated and certified that they were eligible to participate in the PPP and receive such loans.

8. In reliance on Defendants' false statements and certifications, lenders extended First and Second Draw PPP Loans to Affiliated Defendants and other affiliated entities (defined herein) totaling more than $21 million.

9. In further reliance on Defendants' false statements and certifications, lenders forgave the First and Second Draw PPP Loans, including the accrued interest, which cost the United States more than $22 million.

10. Relator files this *qui tam* lawsuit on behalf of the Government to recover from Defendants the SBA-guaranteed, granted, and forgiven monies that were provided to Defendants as a result of their wrongdoing, as well as to recover treble damages and/or penalties and reasonable attorneys' fees, costs and expenses.

## **JURISDICTION AND VENUE**

11. This Court has subject matter jurisdiction over this case pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1331 and 1345.

12. Venue is proper in this judicial district pursuant to 31 U.S.C. § 3732(a) and/or 28 U.S.C. § 1391(b).

13. This Court has personal jurisdiction over Defendants under 31 U.S.C. § 3732(a) because they transact business and submitted false or fraudulent claims directly or indirectly to the federal Government in this judicial district.

14. In accordance with 31 U.S.C. § 3730(b)(2), this Complaint has been filed *in camera* and will remain under seal for a period of at least 60 days and shall not be served on Defendants until the Court so orders.

15. The allegations in this Complaint have not been publicly disclosed. This Court has jurisdiction under 31 U.S.C. § 3730(e)(4) because Relator is an "original source" since it has voluntarily provided this information to the Government before filing this Complaint and has knowledge that is not public in nature and is independent of, and materially adds to, any public disclosure to the extent that any exist.

## THE FALSE CLAIMS ACT

16. Originally enacted in 1863, the False Claims Act ("FCA") was substantially amended in 1986 by the False Claims Amendments Act. The 1986 amendments enhanced the Government's ability to recover losses sustained as a result of fraud against the United States. Further clarifying amendments were adopted in May 2009 and March 2010.

17. The FCA imposes liability upon any person who:

- knowingly presents, or causes to be presented to the Government, a false or fraudulent claim for payment or approval;
- knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; or
- knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government.

31 U.S.C. § 3729(a)(1)(A), (B), (G).

18. The FCA also imposes liability upon any person who conspires to commit any of the acts above in violation of 31 U.S.C. § 3729(a)(1)(A), (B), or (G). 31 U.S.C. § 3729(a)(1)(C).

19. Any person found to have violated these provisions, or to have conspired to violate these provisions, is liable for a civil penalty of at least $5,000 and up to $10,000 for each false or fraudulent claim, as adjusted for inflation,[4] plus three times the amount of damages sustained by the Government. 31 U.S.C. § 3729(a); 20 C.F.R. Part 356; 28 C.F.R. Part 85 (*see* 88 Fed. Reg. 5776, Jan. 30, 2023).

20. The FCA defines the terms "knowing" and "knowingly" to mean that a person:

a. has actual knowledge of the information;

b. acts in deliberate ignorance of the truth or falsity of the information; or

c. acts in reckless disregard of the truth or falsity of the information.

31 U.S.C. § 3729(b)(1)(A). The statute further provides that no proof of specific intent to defraud is required. 31 U.S.C. § 3729(b)(1)(B).

21. The FCA broadly defines a "claim" to include any request or demand, whether under a contract or otherwise, for money or property, and whether or not the United States has title to the money or property, that:

- is presented to an officer, employee, or agent of the United States; or
- is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government:
    - provides or has provided any portion of the money or property requested or demanded; or

[4] For violations that occurred after November 2, 2015, and are assessed after July 3, 2025, penalties are currently at least $14,308, and up to $28,619 for each false or fraudulent claim.

- will reimburse such contractor, grantee, or other recipient for any portion of the money or property requested or demanded.

31 U.S.C. § 3729(b)(2)(A).

22. The FCA empowers private persons with information regarding a false or fraudulent claim against the Government to bring an action on behalf of the Government and to share in any recovery. Such a complaint must be filed under seal and without service on any defendant. The complaint remains under seal while the Government investigates the allegations and determines whether to intervene in the action. 31 U.S.C. § 3730(b).

23. In this action, and under well-established precedent, Defendants' false and fraudulent conduct violated the FCA, as Defendants knowingly submitted false and fraudulent claims for reimbursement to the United States (and failed to return funds and repay loans that were due to be repaid to the United States as a result of the same knowingly false and fraudulent conduct), in violation of federal statutes and regulations material to the submission of applications for Government-subsidized and/or Government-issued small business loans, as well as to the forgiveness of the same.

## THE PAYCHECK PROTECTION PROGRAM

24. During the COVID-19 pandemic, Congress passed the CARES Act. Section 1102 of the CARES Act established the PPP, a program administered by the SBA to provide economic relief to small businesses nationwide that were adversely impacted by the coronavirus pandemic.

25. Section 1102 of the CARES Act temporarily permitted the SBA to guarantee 100% of the PPP loans. Section 1106 of the CARES Act provided for forgiveness of up to the full principal amount of qualifying loans guaranteed under the PPP.

26. Under the PPP, eligible small businesses could obtain ***one*** SBA-guaranteed PPP loan. Businesses were required to spend loan proceeds for employee compensation, rent or

mortgage, and other specified expenses and, depending on their use of the loan proceeds, could qualify for loan forgiveness, up to the full amount of the loan.

27. A business's eligibility as a "small business concern" depended on its particular industry, as defined under the NAICS. *See* 15 U.S.C. §§ 632(a), 636(a)(36), 694(a)(9).

28. The SBA published the Paycheck Protection Program Loans Frequently Asked Questions ("FAQs"), which provide guidance for borrowers and lenders, explain small business concerns (15 U.S.C. § 632(a)), and detail exceptions.[5]

29. Importantly, when determining eligibility, businesses such as Affiliated Defendants were required to aggregate the employees and financial metrics of all affiliated entities. Specifically, the SBA considered whether a business had "affiliates" subject to mutual equity/stock ownership or overlapping management and/or control. *See* 13 C.F.R. § 121.103(a). Businesses which are "affiliates" of each other under the SBA's definitions "may be treated as one party with such interests aggregated," including aggregating the businesses' annual receipts and number of employees. *See id.* §§ 121.103, 121.104, 121.106.

30. Affiliated Defendants used several different NAICS codes. As explained below, in the aggregate, Affiliated Defendants greatly exceeded the relevant alternative size standards for all of those codes.

31. The SBA delegated authority to third-party lenders to underwrite and approve the PPP loans. To obtain a PPP loan, a qualifying business (through its authorized representative)

---

[5] *See* SBA, *Paycheck Protection Program Loans Frequently Asked Questions*, https://www.sba.gov/sites/default/files/2021-01/Paycheck-Protection-Program-Frequently-Asked-Questions.pdf (Jan. 29, 2021) (stating that "[s]mall business concerns can be eligible borrowers even if they have more than 500 employees, so long as they satisfy the existing statutory and regulatory definition of 'small business concern' ... [or] if it met both tests in the SBA's 'alternative size standard' as of March 27, 2020").

signed and submitted a First Draw PPP Loan application ("Form 2483") online through the lender's application platform. Form 2483 requires the business (through its authorized representative) to acknowledge the PPP rules and make certain affirmative certifications to be eligible to obtain the PPP loan.

32. Form 2483 requires a business to provide an average monthly payroll expense, the business's number of employees, and the names of all owners who own 20% or more equity in the business, in addition to requiring the borrower to represent the "purpose of the loan" by checking boxes for more than one of the following categories: payroll, lease/mortgage interest, utilities, or other (with space provided to explain "other").

33. The Form 2483 asked, "[i]s the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" If the answer was yes, the applicant was required to "list all such businesses and describe the relationship on a separate sheet[.]"

34. Additionally, Form 2483 required the following certifications:

a. ***The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted*** that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under [the CARES Act] (the Paycheck Protection Program Rule).

b. ***All SBA loan proceeds will be used only for business-related purposes as specified in the loan application*** and consistent with the Paycheck Protection Program Rule.

(emphasis added).

35. Form 2483 further requires, in relevant part, that an authorized representative of every applicant "certify in good faith" each of the following items by initialing next to each item:

a. Current economic uncertainty makes this loan request ***necessary to support the ongoing operations of the Applicant.***

b. ***The funds will be used to retain workers and maintain payroll*** or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule; ***I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.***

c. ***I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.***

(emphasis added).

36. The Second Draw PPP Loan application ("Form 2483-SD") required the same certifications to be made.

37. Pursuant to the express language in Form 2483, Defendants, as signatories of Form 2483s and Form 2483-SDs, were required to certify as to the truth and accuracy of these representations, the falsity of which is punishable by significant liability, fines, and imprisonment.

38. Lenders were compensated by the federal Government via processing fees based on the balance of the financing outstanding at the time of final disbursement, in the following amounts:

- Five (5) percent for loans of not more than $350,000;
- Three (3) percent for loans of more than $350,000 and less than $2,000,000; and
- One (1) percent for loans of at least $2,000,000.

39. Borrowers also had to submit documentation necessary to establish eligibility such as payroll processor records, payroll tax filings, and Form 1099s, as well as certain income and expenses documentation.

40. In general, under the PPP, the maximum amount borrowers could receive was calculated by aggregating payroll costs from the previous year, with annual employee salaries capped at $100,000. The borrower then calculated the average monthly payroll cost and multiplied that amount by a factor of 2.5 to determine the loan amount.

41. The Economic Aid Act (P.L. 116-260, in the Consolidated Appropriations Act of 2021), authorized and funded a Second Draw PPP Loan program.

42. For Second Draw PPP Loans, lenders were compensated by the Government via processing fees based on the balance of the financing outstanding at the time of final disbursement, in the amount of five percent for loans of more than $50,000 and not more than $350,000, and in the amount of three percent for loans above $350,000.

43. Each borrower certified on the First and Second Draw PPP Loan applications that they were eligible to receive the loans under the PPP guidelines and that their applications and supporting documentation were accurate.

44. Borrowers were then able to seek forgiveness of the loans if the funds were used for eligible payroll costs, payments on business mortgage interest, rent, or utilities during either the eight- or 24-week period post loan disbursement.

## THE PARTIES

45. Relator, Crestline Analytics, is a mission-driven firm dedicated to combating fraud, waste, and abuse of taxpayer dollars. Relator is an original source within the meaning of 31 U.S.C. § 3730(e)(4).

46. Defendant, Elmore Companies, Inc., is, and was at all pertinent times, an Indiana corporation with a principal office address of 304 W. Kirkwood Ave., Suite 100, Bloomington, IN 47404, the same address as Defendants Ameriforce, Bellwether Forest, Butterfield Foods, CardDawg, Firmatek, Gant Travel, LFPS, Rocky Mountain Vibes, Shelby Equipment, and Turner Mining. Elmore Companies was incorporated in 2006 by Defendant DG Elmore and Lori Thomas.[6] Elmore Companies is a private equity firm "focused on acquiring lower-middle market companies. Inclined toward growth and profitability, [Elmore Companies] manage[s] [their] companies with an emphasis on long-term value creation, not the intent to sell."[7] At all relevant times, Elmore Companies owned and/or controlled each Affiliated Defendant.

47. Defendant, Adams & Westlake Ltd., is, and was at all pertinent times, a Delaware corporation with a principal office address of 940 N. Michigan St., Elkhart, IN 46514. Acquired by Elmore Companies in 1998, Adams & Westlake "is a custom manufacturer with a broad range of capabilities that provide quality hardware, commercial window coverings, and other internal products to the transit and rail industries."[8] In a January 2019 filing with the Indiana Secretary of State, Defendant DG Elmore is listed as the registered agent for Adams & Westlake with an address of 304 W. Kirkwood Ave., Bloomington, IN 47404. In a November 2020 filing

---

[6] According to Elmore Companies' website, Lori Thomas ("Thomas") is "a seasoned Corporate Secretary and Director of Administration with over 25 years experience at Elmore Companies." Thomas acts as the Corporate Secretary for Elmore Companies, "serves as a resource for principals and senior management, maintaining key corporate records" and "works directly with the Chairman of Elmore Companies and the Elmore Family Office." Thomas has "represented the group during the two-year construction of a $15M mixed use building and related sales process, and has served as President for one of the direct investment companies." *See* Elmore Companies, *Introducing the People Who Make it Happen*, https://elmorecompanies.com/about-us/our-team/ (last visited July 13, 2026).

[7] LinkedIn, *Elmore Companies*, linkedin.com/company/elmore-companies (last visited July 13, 2026).

[8] Elmore Companies, *Learn About Our Companies*, https://elmorecompanies.com/about-us/our-companies/ (last visited July 13, 2026).

with the Indiana Secretary of State, Defendant DG Elmore is listed as the registered agent for Adams & Westlake with an address of 304 W. Kirkwood Ave., Bloomington, IN 47404. DG Elmore is also listed as the Chairman of Adams & Westlake and Defendant Randy Schneider is listed as the CEO. Upon information and belief, during the relevant times, Adams & Westlake had annual receipts of approximately $6.1 million. As discussed more fully below, Adams & Westlake applied for and received a First Draw PPP Loan in the amount of $292,900 in 2020 (at which time it reported having 28 employees) and a Second Draw PPP Loan in the amount of $272,917.50 in 2021 (at which time it reported having 25 employees).

48. Defendant, Ameriforce Media LLC, is, and was at all pertinent times, an Indiana limited liability company with a principal office address of 304 W. Kirkwood Ave., Suite 100, Bloomington, IN 47404, the same address as Defendants Elmore Companies, Bellwether Forest, Butterfield Foods, CardDawg, Firmatek, Gant Travel, LFPS, Rocky Mountain Vibes, Shelby Equipment, and Turner Mining. Ameriforce was acquired by Elmore Companies in 2015 and provides "military news and lifestyle content to U.S. military active-duty and reserve component service members, veterans, and their families stationed at over 2,500 installations around the world."[9] Defendant DG Elmore is listed as the Chairman of Ameriforce. Defendant Todd Taranto is listed as the President of Ameriforce. Lori Thomas is listed as the Secretary of Ameriforce. In a July 2019 filing with the Indiana Secretary of State signed by Lori Thomas, she is listed as the Secretary and registered agent for Ameriforce with an address of 304 W. Kirkwood Ave., Suite 100, Bloomington, IN 47404 and email address of lori.thomas@elmorecompanies.com; DG Elmore is listed at the same address as the Chairman of

[9] Elmore Companies, *Learn About Our Companies*, https://elmorecompanies.com/about-us/our-companies/ (last visited July 1, 2026).

Ameriforce; and Todd Taranto is listed at the same address as the President of Ameriforce. In a July 2021 filing with the Indiana Secretary of State signed by Lori Thomas, she is listed as the Secretary and registered agent for Ameriforce with an address of 304 W. Kirkwood Ave., Suite 100, Bloomington, IN 47404; DG Elmore is listed at the same address as the Chairman of Ameriforce; and Todd Taranto is listed at the same address as the President of Ameriforce. As discussed more fully below, Ameriforce applied for and received a First Draw PPP Loan in the amount of $59,300 in 2020 (at which time it reported having four employees) and a Second Draw PPP Loan in the amount of $58,500 in 2021 (at which time it reported having 81 employees).

49. Defendant, Bellwether Forest Products, LLC, is, and was at all pertinent times, a Texas limited liability company. Bellwether Forest "is an integrated wood supply company providing timber purchasing, harvesting, and transport services that connect timberland owners with a wide array of wood consuming markets" that was acquired by Elmore Companies in 2016.[10] Defendant Lauren Elmore is listed on the Texas Secretary of State website as the registered agent for Bellwether Forest. On August 25, 2019, Defendant Gant Elmore executed and filed the Texas Franchise Tax Public Information Report as a member-manager on behalf of Bellwether Forest. That filing lists the principal office address for Bellwether Forest as 555 N. Morton St., Bloomington, IN 47404, the same address used at various times by Defendants Butterfield Foods, Rocky Mountain Vibes, Shelby Equipment, Solution Tree, and Turner Mining. On September 2, 2021, Defendant Gant Elmore executed and filed the Texas Franchise Tax Public Information Report as a member-manager on behalf of Bellwether Forest. That filing

---

[10] Elmore Companies, *Learn About Our Companies*, https://elmorecompanies.com/about-us/our-companies/ (last visited July 1, 2026).

lists the principal office address for Bellwether Forest as 304 W. Kirkwood Ave., Suite 100, Bloomington, IN 47404, the same address as Defendants Elmore Companies, Ameriforce, Butterfield Foods, CardDawg, Firmatek, Gant Travel, LFPS, Rocky Mountain Vibes, Shelby Equipment, and Turner Mining and also lists Defendants Lauren Elmore and Todd Taranto as member-managers of Bellwether Forest. In June 2023, Defendants Lauren Elmore, Gant Elmore, and Todd Taranto were listed as member-managers of Bellwether Forest and Lauren Elmore was also listed as the registered agent. At all relevant times, Defendant Matt Moldenhauer was the president of Bellwether Forest. Elmore Companies sold Bellwether Forest in late 2021. Upon information and belief, Bellwether Forest had annual receipts between $15 million to $26 million in 2020 and 2021. As discussed more fully below, Bellwether Forest applied for and received a First Draw PPP Loan[11] in the amount of $519,100 in 2020 (at which time it reported having 42 employees) and a Second Draw PPP Loan in the amount of $494,600 in 2021 (at which time it reported having 229 employees).

50. Defendant, Butterfield Foods, LLC, is, and was at all pertinent times, an Indiana limited liability company. In 2019, Butterfield Foods had a principal office address of 555 N. Morton St., Bloomington, IN 47404, the same address used at various times by Defendants Bellwether Forest, Rocky Mountain Vibes, Shelby Equipment, Solution Tree, and Turner Mining. By 2021, the principal office address for Butterfield Foods had changed to 304 W. Kirkwood Ave., Suite 100, Bloomington, IN 47404, the same address as Defendants Elmore Companies, Ameriforce, Bellwether Forest, CardDawg, Firmatek, Gant Travel, LFPS, Rocky Mountain Vibes, Shelby Equipment, and Turner Mining. Butterfield Foods was acquired by

[11] Loan information incorrectly lists the loan as being applied for by, and issued to, Bellwether Forrest Products, LLC.

Elmore Companies in 2007 and "makes prepared custom foods for grocery, foodservice and convenience store customers across the United States" such as "supermarkets, restaurants, convenience stores, big-box retailers, and other food production companies."[12] In a May 2019 filing with the Indiana Secretary of State, Defendant DG Elmore is listed as the registered agent for Butterfield Foods with an address of 304 W. Kirkwood Ave., Bloomington, IN 47404. In a May 2021 filing with the Indiana Secretary of State, Lori Thomas is listed as the registered agent and Secretary for Butterfield Foods with an address of 304 W. Kirkwood Ave., Suite 100, Bloomington, IN 47404 and the email address, lorithomas@elmorecompanies.com. DG Elmore is also listed as the Chairman of Butterfield Foods and Defendant Frank Violi is listed as the CEO. As discussed more fully below, Butterfield Foods applied for and received a First Draw PPP Loan in the amount of $919,400 in 2020 (at which time it reported having 151 employees).

51. Defendant, CardDawg, LLC f/k/a CardDawg Management, LLC, is, and was at all pertinent times, a Texas limited liability company. CardDawg is classified as an "Office of Other Holding Companies." Defendant Lauren Elmore is listed on the Texas Secretary of State website as the registered agent for CardDawg. On September 13, 2019, Defendant Lauren Elmore executed and filed the Texas Franchise Tax Public Information Report as a shareholder on behalf of CardDawg. That filing lists Gant Elmore, with an address of 304 W. Kirkwood Ave., Suite 100, Bloomington, IN 47404, as the President of CardDawg and Lauren Elmore as the CEO. On September 10, 2021, Defendant Gant Elmore executed and filed the Texas Franchise Tax Public Information Report as the President of CardDawg. That filing lists the principal office address for CardDawg as 304 W. Kirkwood Ave., Suite 100, Bloomington, IN

[12] Elmore Companies, *Learn About Our Companies*, https://elmorecompanies.com/about-us/our-companies/ (last visited July 13, 2026).

47404, the same address as Defendants Elmore Companies, Ameriforce, Bellwether Forest, Butterfield Foods, Firmatek, Gant Travel, LFPS, Rocky Mountain Vibes, Shelby Equipment, and Turner Mining. As discussed more fully below, CardDawg applied for and received a First Draw PPP Loan[13] in the amount of $112,400 in 2020 (at which time it reported having 5 employees).

52. Defendant, Colorado Springs Baseball Club LLC is, and was at all pertinent times, an Indiana limited liability company. Formed in November 2018, Rocky Mountain Vibe[14] had a principal office address of 555 N. Morton St., Bloomington, IN 47404, the same address used at various times by Defendants Bellwether Forest, Butterfield Foods, Shelby Equipment, Solution Tree and Turner Mining. The Certificate of Organization filed with the Indiana Secretary of State in November 2018 lists Gant Elmore as the President, DG Elmore as the Chairman and Lori Thomas as the Secretary all at the 555 N. Morton Street address. By 2020, the principal office address for Rocky Mountain Vibes had changed to 304 W. Kirkwood Ave., Suite 100, Bloomington, IN 47404, the same address as Defendants Elmore Companies, Ameriforce, Bellwether Forest, Butterfield Foods, CardDawg, Firmatek, Gant Travel, LFPS, Shelby Equipment, and Turner Mining. In a September 2020 filing with the Indiana Secretary of State signed by Lori Thomas, Gant Elmore is listed as the President, DG Elmore is listed as the Chairman, and Lori Thomas is listed as the Secretary, all at the 304 W. Kirkwood Avenue

---

[13] Loan information incorrectly lists the loan as being applied for by, and issued to, CardDawg Managment [sic], LLC.

[14] The Elmore Companies' website states that Rocky Mountain Vibes was acquired in 1999 and "are a professional minor league baseball team in the Pioneer Baseball League, an MLB Professional Partner League." Elmore Companies, *Learn About Our Companies*, https://elmorecompanies.com/about-us/our-companies/ (last visited July 13, 2026). Upon information and belief, Rocky Mountain Vibes has gone through numerous corporate iterations since 1999.

address. As discussed more fully below, Rocky Mountain Vibes applied for and received a First Draw PPP Loan in the amount of $359,900 in 2020 (at which time it reported having 31 employees) and a Second Draw PPP Loan in the amount of $359,900 in 2021 (at which time it reported having 52 employees).

53. Defendant, Cornerstone Information Systems, Inc., is, and was at all pertinent times, an Indiana corporation. Acquired by Elmore Companies in 1992, CIS "is an IT Services provider helping travel companies and direct buyers automate their fulfillment, information, and spend management processes."[15] Since June 24, 2019, CIS has had a principal office address of 304 W. Kirkwood Ave., Ste 101, Bloomington, IN 47404. During all relevant times, Defendants DG Elmore and Matias Orrego have been the co-Chairmen of CIS. As discussed more fully below, CIS applied for and received a First Draw PPP Loan in the amount of $1,666,400 in 2020 (at which time it reported having 88 employees) and a Second Draw PPP Loan also in the amount of $1,666,400 in 2021 (at which time it reported having 75 employees).

54. Defendant, Firmatek, LLC, is, and was at all pertinent times, a Texas limited liability company. Firmatek was acquired by Elmore Companies in 2014 and "provides geospatial mapping solutions for [their] clients in the mining, landfill and waste management, and electric utilities industries."[16] On October 9, 2019, October 8, 2020, and October 14, 2021, Defendant Gant Elmore executed and filed Texas Franchise Tax Public Information Reports as an officer on behalf of Firmatek. Those filings list the principal office address for Firmatek as 304 W. Kirkwood Ave., Suite 100, Bloomington, IN 47404, the same address as Defendants Elmore Companies, Ameriforce, Bellwether Forest, Butterfield Foods, CardDawg, Gant Travel,

[15] Elmore Companies, *Learn About Our Companies*, https://elmorecompanies.com/about-us/our-companies/ (last visited July 13, 2026).
[16] *Id.*

LFPS, Rocky Mountain Vibes, Shelby Equipment, and Turner Mining. At all relevant times, Lauren Elmore was the President of Firmatek and Gant Elmore has been the Vice President or Executive Chairman. Upon information and believe, during the relevant times, Firmatek had annual receipts of approximately $16.5 million to $18.1 million. As discussed more fully below, Firmatek applied for and received a First Draw PPP Loan in the amount of $571,500 in 2020 (at which time it reported having 32 employees) and a Second Draw PPP Loan in the amount of $532,500 in 2021 (at which time it reported having 229 employees).

55. Defendant, Gant Travel, Ltd., is, and was at all pertinent times, an Indiana corporation with a principal office address of 304 W. Kirkwood Ave., Suite 100, Bloomington, IN 47404, the same address as Defendants Elmore Companies, Ameriforce, Bellwether Forest, Butterfield Foods, CardDawg, Firmatek, LFPS, Rocky Mountain Vibes, Shelby Equipment, and Turner Mining. Acquired by Elmore Companies in 1989, Gant Travel "is a digitally driven corporate travel management company that helps control the expense and experience of corporate travel."[17] In an August 2019 filing with the Indiana Secretary of State, Defendant DG Elmore is listed as the registered agent and Chairman of Gant Travel with an address of 304 W. Kirkwood Ave., Suite 100, Bloomington, IN 47404. Lori Thomas is listed as the Secretary of Gant Travel at the same address. In a July 2021 filing with the Indiana Secretary of State, Defendant DG Elmore is listed as the registered agent and Chairman of Gant Travel with an address of 304 W. Kirkwood Ave., Suite 100, Bloomington, IN 47404. Lori Thomas is listed as the Secretary of Gant Travel at the same address. Upon information and believe, during the relevant times, Gant Travel had annual receipts of approximately $10 million to $50 million. As discussed more fully below, Gant Travel applied for and received a First Draw PPP Loan in the

[17] *Id.*

amount of $1,600,800 in 2020 (at which time it reported having 96 employees) and a Second Draw PPP Loan in the amount of $1,601,400 in 2021 (at which time it also reported having 96 employees).

56. Defendant, Legacy Fire Protection Services LLC, is, and was at all pertinent times, an Indiana limited liability company with a principal office address of 304 W. Kirkwood Ave., Suite 100, Bloomington, IN 47404, the same address as Defendants Elmore Companies, Ameriforce, Bellwether Forest, Butterfield Foods, CardDawg, Firmatek, Gant Travel, Rocky Mountain Vibes, Shelby Equipment, and Turner Mining. LFPS was acquired by Elmore Companies in 2015 and "is a full-service fire protection company specializing in Installation Services, Inspections, Repair & Maintenance on all fire protection needs."[18] In an August 2019 filing with the Indiana Secretary of State signed by Lori Thomas, she is listed as the registered agent for LFPS with an address of 304 W. Kirkwood Ave., Suite 100, Bloomington, IN 47404. Defendant Randy Schneider is listed at the same address as the only member of LFPS. In a June 2021 filing with the Indiana Secretary of State signed by Defendant Randy Schneider, he is listed as the sole member of LFPS with an address of 304 W. Kirkwood Ave., Suite 100, Bloomington, IN 47404. Lori Thomas is listed as the registered agent at the same address. As discussed more fully below, LFPS applied for and received a First Draw PPP Loan in the amount of $152,500 in 2020 (at which time it reported having 12 employees) and a Second Draw PPP Loan in the amount of $169,665 in 2021 (at which time it reported having 15 employees).

57. Defendant, Shelby Equipment, Inc., is, and was at all pertinent times, an Indiana corporation. Shelby Equipment currently has a principal office address of 304 W. Kirkwood Ave., Suite 100, Bloomington, IN 47404, the same address as Defendants Elmore Companies,

---

[18] *Id.*

Ameriforce, Bellwether Forest, Butterfield Foods, CardDawg, Firmatek, Gant Travel, LFPS, Rocky Mountain Vibes, and Turner Mining. Shelby Equipment was acquired by Elmore Companies in 2007 and "specializes in the sale of [construction] parts from industry-leading manufacturers."[19] In a March 2019 filing with the Indiana Secretary of State signed by Lori Thomas, she is listed as the Secretary for Shelby Equipment with an address of 304 W. Kirkwood Ave., Bloomington, IN 47404. At that time, the principal office address for Shelby Equipment was listed as 555 N. Morton St., Bloomington, IN 47404, the same address used at various times by Defendants Bellwether Forest, Butterfield Foods, Rocky Mountain Vibes, Solution Tree, and Turner Mining. In that filing, DG Elmore is listed as the registered agent for Shelby Equipment with an address of 304 W. Kirkwood Ave., Bloomington, IN 47404 and is listed with Lori Thomas' email address of lori.thomas@elmorecompanies.com. In a March 2021 filing with the Indiana Secretary of State signed by Lori Thomas, she is listed as the Secretary for Shelby Equipment with an address of 304 W. Kirkwood Ave., Suite 100, Bloomington, IN 47404. At that time, the principal office address for Shelby Equipment had been changed to listed as 304 W. Kirkwood Ave., Suite 100, Bloomington, IN 47404. In that filing, DG Elmore is listed as the registered agent and Chairman for Shelby Equipment with an address of 304 W. Kirkwood Ave. Suite 100, Bloomington, IN 47404 and is listed with Lori Thomas' email address of lori.thomas@elmorecompanies.com. As discussed more fully below, Shelby Equipment applied for and received a First Draw PPP Loan in the amount of $23,900 in 2020 (at which time it reported having 1 employee) and a Second Draw PPP Loan also in the amount of $23,900 in 2021 (at which time it reported having 36 employees).

---

[19] *Id.*

58. Defendant, Solution Tree Inc., is and was at all pertinent times, an Indiana corporation. Solution Tree was acquired by Elmore Companies in 1998 and "provide[s] professional development resources and services to Pre K – 12 schools."[20] In a November 2018 filing with the Indiana Secretary of State, Defendant DG Elmore is listed as the sole Principal and Treasurer for Solution Tree with an address of 555 N. Morton St., Bloomington, IN 47404, the same address used at various times by Defendants Bellwether Forest, Butterfield Foods, Rocky Mountain Vibes, Shelby Equipment, and Turner Mining. In a September 2020 filing with the Indiana Secretary of State signed by Defendant DG Elmore, he is listed as the sole Principal and Treasurer for Solution Tree with an address of 555 N. Morton St., Bloomington, IN 47404. In an October 2022 filing with the Indiana Secretary of State, Defendant DG Elmore is listed as the sole Principal and Treasurer for Solution Tree with an address of 555 N. Morton St., Bloomington, IN 47404. Upon information and believe, during the relevant times, Solution Tree had annual receipts of approximately $42.1 million. As discussed more fully below, Solution Tree applied for and received a First Draw PPP Loan in the amount of $3,361,000 in 2020 (at which time it reported having 221 employees) and a Second Draw PPP Loan in the amount of $2,000,000 in 2021 (at which time it reported having 215 employees).

59. Defendant, Turner Mining Group LLC, is a Texas limited liability company with a principal office address of 304 W. Kirkwood Ave., Suite 100, Bloomington, IN 47404, the same address as Defendants Elmore Companies, Ameriforce, Bellwether Forest, Butterfield Foods, CardDawg, Firmatek, Gant Travel, LFPS, Rocky Mountain Vibes, and Shelby Equipment. Turner Mining was acquired by Elmore Companies in 2017 and "is a full-service

---

[20] *Id.*

provider to the mining sector with site operations throughout the United States."[21] In a June 2019 filing with the Indiana Secretary of State, the principal office address for Turner Mining is listed as 555 N. Morton St., Bloomington, IN 47404, the same address used at various times by Defendants Bellwether Forest, Butterfield Foods, Rocky Mountain Vibes, Shelby Equipment, and Solution Tree. The same filing lists Lori Thomas as the registered agent for Turner Mining and Defendant Keaton Turner as the President, both at the same address. In a June 2021 filing with the Indiana Secretary of State, he is listed as the sole member of Turner Mining with an address of 304 W. Kirkwood Ave., Suite 100, Bloomington, IN 47404. Lori Thomas is listed as the registered agent at the same address. In March 2020, Defendant Keaton Turner reported that Turner Mining would have revenues of $100 million in 2020.[22] As discussed more fully below, Turner Mining applied for and received a First Draw PPP Loan in the amount of $2,975,000 in 2020 (at which time it reported having 167 employees) and a Second Draw PPP Loan in the amount of $2,000,000 in 2021 (at which time it reported having 229 employees).

60. Defendant, DG Elmore, is, and was at all pertinent times, an individual and a resident and citizen of the state of Indiana. DG Elmore is, and has been at all relevant times, the Chairman of Defendant Elmore Companies. In addition, at relevant times from 2019 to 2021, DG Elmore was the registered agent for Adams & Westlake, Butterfield Foods, Gant Travel, and Shelby Equipment; the Chairman for Adams & Westlake, Ameriforce, Butterfield Foods, CIS, Gant Travel, Rocky Mountain Vibes, and Shelby Equipment; and the sole Principal and Treasurer for Solution Tree.

---

[21] *Id.*

[22] Forbes, *"Young People Should Win:" Keaton Turner On Making His Tough Jobs Fun*, https://www.forbes.com/sites/jimvinoski/2020/03/02/young-people-should-win-keaton-turner-on-making-his-tough-jobs-fun/ (Mar. 2, 2020).

61. Defendant, Lauren Elmore a/k/a Lauren Moore ("Lauren Elmore"), is, and was at all pertinent times, an individual and a resident and citizen of the state of Colorado. Lauren Elmore, DG Elmore's daughter, is a partner at Defendant Elmore Companies and, at relevant times from 2019 to 2021, was the registered agent and member-manager of Bellwether Forest and the President of Firmatek.

62. Defendant, Gant Elmore, is, and was at all pertinent times, an individual and a resident and citizen of the state of Indiana. Gant Elmore, DG Elmore's son, is a partner at Defendant Elmore Companies and, at relevant times from 2019 to 2021, was a member-manager of Bellwether Forest, the President of Rocky Mountain Vibes, and the Vice-President of Firmatek.

63. Defendant, Matt Moldenhauer, is, and was at all pertinent times, an individual and a resident and citizen of the state of Wisconsin. Moldenhauer is a partner at Defendant Elmore Companies and, at relevant times from 2019 to 2021, was the President of Bellwether Forest.

64. Defendant, Todd Taranto, is, and was at all pertinent times, an individual and a resident and citizen of the state of Massachusetts. Taranto is a partner at Defendant Elmore Companies and, at relevant times from 2019 to 2021, was the President of Ameriforce and a member-manager of Bellwether Forest.

65. Defendant, Matias Orrego, is, and was at all pertinent times, an individual and a resident and citizen of the state of Indiana. At relevant times from 2019 to 2021, Orrego was the Co-Chairman of CIS.

66. Defendant, Frank Violi, is, and was at all pertinent times, an individual and a resident and citizen of the state of Indiana. At relevant times from 2019 to 2021, Violi was the President and/or CEO of Butterfield Foods.

67. Defendant, Keaton Turner, is, and was at all pertinent times, an individual and a resident and citizen of the state of Indiana. At relevant times from 2019 to 2021, Turner was the President of Turner Mining.

68. Defendant, Randy Schneider, is, and was at all pertinent times, an individual and a resident and citizen of the state of Indiana. At relevant times from 2019 to 2021, Schneider was the CEO of Adams & Westlake and the sole member of LFPS.

69. Defendants, John Does 1–20, are additional affiliated persons and/or companies owned, managed and controlled by Elmore Companies that likewise may have obtained fraudulent PPP loans, the identities of which are presently unknown to Relator but which, upon information and belief, form part of an integrated enterprise.

## THE PPP LOANS

### A. Affiliated Defendants' First Draw PPP Loans

***Adams & Westlake Ltd.***

70. In or about April 2020, Adams & Westlake applied for a First Draw PPP Loan in the amount of $292,900. It reported 28 employees on its First Draw PPP Loan application.

71. An authorized representative of Adams & Westlake prepared its Form 2483, in which the representative falsely and fraudulently certified that Adams & Westlake was a small business concern for purposes of participation in the PPP, by failing to acknowledge that it was affiliated with other Affiliated Defendants, and by omitting information regarding common ownership and/or management and control by Elmore Companies.

72. In conjunction with its application, Adams & Westlake reported that its business industry was "All Other Miscellaneous Fabricated Metal Product Manufacturing" and utilized the NAICS Code 332999.

73. Adams & Westlake was approved for First Draw PPP Loan number 6504847000 in the amount of $292,900 by Centier Bank on April 7, 2020.

74. On or about June 16, 2021, the loan (plus interest) was forgiven in the total amount of $296,302.45, causing the United States to reimburse Centier Bank for the full amount, which cost the Government at least $296,302.45.

***Ameriforce Media***

75. In or about April 2020, Ameriforce applied for a First Draw PPP Loan in the amount of $59,300. It reported four employees on its First Draw PPP Loan application.

76. An authorized representative of Ameriforce prepared its Form 2483, in which the representative falsely and fraudulently certified that Ameriforce was a small business concern for purposes of participation in the PPP, by failing to acknowledge that it was affiliated with other Affiliated Defendants, and by omitting information regarding common ownership and/or management and control by Elmore Companies.

77. In conjunction with its application, Ameriforce reported that its business industry was "Media Representatives" and utilized the NAICS Code 541840.

78. Ameriforce was approved for First Draw PPP Loan number 6018197000 in the amount of $59,300 by First Financial Bank on April 6, 2020.

79. On or about June 16, 2021, the loan (plus interest) was forgiven in the total amount of $59,995, causing the United States to reimburse First Financial Bank for the full amount, which cost the Government at least $59,995.

***Bellwether Forest Products LLC***

80. In or about April 2020, Bellwether Forest applied for a First Draw PPP Loan in the amount of $519,100. It reported 42 employees on its First Draw PPP Loan application.

81. An authorized representative of Bellwether Forest prepared its Form 2483, in which the representative falsely and fraudulently certified that Bellwether Forest was a small business concern for purposes of participation in the PPP, by failing to acknowledge that it was affiliated with other Affiliated Defendants, and by omitting information concerning its common ownership and/or management and control by Elmore Companies.

82. In conjunction with its application, Bellwether Forest reported that its business industry was "Forest Nurseries and Gathering of Forest Products" and utilized the NAICS Code 113210.

83. Bellwether Forest was approved for First Draw PPP Loan number 5053967007 in the amount of $519,100 by First Financial Bank on April 4, 2020.

84. On or about July 20, 2021, the loan (plus interest) was forgiven in the total amount of $525,713.19, causing the United States to reimburse First Financial Bank for the full amount, which cost the Government at least $525,713.19.

***Butterfield Foods, LLC***

85. In or about April 2020, Butterfield Foods applied for a First Draw PPP Loan in the amount of $919,400. It reported 151 employees on its First Draw PPP Loan application.

86. An authorized representative of Butterfield Foods prepared its Form 2483, in which the representative falsely and fraudulently certified that Butterfield Foods was a small business concern for purposes of participation in the PPP, by failing to acknowledge that it was affiliated with other Affiliated Defendants, and by omitting information concerning its common ownership and/or management and control by Elmore Companies.

87. In conjunction with its application, Butterfield Foods reported that its business industry was "All Other Miscellaneous Food Manufacturing" and utilized the NAICS Code 311999.

88. Butterfield Foods was approved for First Draw PPP Loan number 6427797004 in the amount of $919,400 by First Financial Bank on April 6, 2020.

89. On or about June 11, 2021, the loan (plus interest) was forgiven in the total amount of $930,130.53, causing the United States to reimburse First Financial Bank for the full amount, which cost the Government at least $930,130.53.

***CardDawg, LLC f/k/a CardDawg Management, LLC***

90. In or about April 2020, CardDawg applied for a First Draw PPP Loan in the amount of $112,400. It reported 5 employees on its First Draw PPP Loan application.

91. An authorized representative of CardDawg prepared its Form 2483, in which the representative falsely and fraudulently certified that CardDawg was a small business concern for purposes of participation in the PPP, by failing to acknowledge that it was affiliated with other Affiliated Defendants, and by omitting information concerning its common ownership and/or management and control by Elmore Companies.

92. In conjunction with its application, CardDawg reported that its business industry was "Environmental Consulting Services" and utilized the NAICS Code 541620.[23]

93. CardDawg was approved for First Draw PPP Loan number 6357467003 in the amount of $112,400 by First Financial Bank on April 6, 2020.

---

[23] Upon information and belief, this is an inaccurate NAICS Code for CardDawg.

94. On or about July 19, 2021, the loan (plus interest) was forgiven in the total amount of $113,823, causing the United States to reimburse First Financial Bank for the full amount, which cost the Government at least $113,823.

***Colorado Springs Baseball Club LLC d/b/a Rocky Mountain Vibes***

95. In or about April 2020, Rocky Mountain Vibes applied for a First Draw PPP Loan in the amount of $359,900. It reported 31 employees on its First Draw PPP Loan application.

96. An authorized representative of Rocky Mountain Vibes prepared its Form 2483, in which the representative falsely and fraudulently certified that Rocky Mountain Vibes was a small business concern for purposes of participation in the PPP, by failing to acknowledge that it was affiliated with other Affiliated Defendants, and by omitting information concerning its common ownership and/or management and control by Elmore Companies.

97. In conjunction with its application, Rocky Mountain Vibes reported that its business industry was "Sports Teams and Clubs" and utilized the NAICS Code 711211.

98. Rocky Mountain Vibes was approved for First Draw PPP Loan number 6590637002 in the amount of $359,900 by First Financial Bank on April 7, 2020.

99. On or about June 10, 2021, the loan (plus interest) was forgiven in the total amount of $364,051, causing the United States to reimburse First Financial Bank for the full amount, which cost the Government at least $364,051.

***Cornerstone Information Systems, Inc.***

100. In or about April 2020, CIS applied for a First Draw PPP Loan in the amount of $1,666,400. It reported 88 employees on its First Draw PPP Loan application.

101. An authorized representative of CIS prepared its Form 2483, in which the representative falsely and fraudulently certified that CIS was a small business concern for

purposes of participation in the PPP, by failing to acknowledge that it was affiliated with other Affiliated Defendants, and by omitting information concerning its common ownership and/or management and control by Elmore Companies.

102. In conjunction with its application, CIS reported that its business industry was "Custom Computer Programming Services" and utilized the NAICS Code 541511.

103. CIS was approved for First Draw PPP Loan number 5761907001 in the amount of $1,666,400 by First Financial Bank on April 6, 2020.

104. On or about February 5, 2021, the loan (plus interest) was forgiven in the total amount of $1,680,096.44, causing the United States to reimburse First Financial Bank for the full amount, which cost the Government at least $1,680,096.44.

***Firmatek, LLC***

105. In or about April 2020, Firmatek applied for a First Draw PPP Loan in the amount of $571,500. It reported 32 employees on its First Draw PPP Loan application.

106. An authorized representative of Firmatek prepared its Form 2483, in which the representative falsely and fraudulently certified that Firmatek was a small business concern for purposes of participation in the PPP, by failing to acknowledge that it was affiliated with other Affiliated Defendants, and by omitting information concerning its common ownership and/or management and control by Elmore Companies.

107. In conjunction with its application, Firmatek reported that its business industry was "Instruments and Related Products Manufacturing for Measuring, Displaying, and Controlling Industrial Process Variables" and utilized the NAICS Code 334513.

108. Firmatek was approved for First Draw PPP Loan number 6434287002 in the amount of $571,500 by First Financial Bank on April 6, 2020.

109. On or about July 26, 2021, the loan (plus interest) was forgiven in the total amount of $578,843.38, causing the United States to reimburse First Financial Bank for the full amount, which cost the Government at least $578,843.38.

***Gant Travel Ltd.***

110. In or about April 2020, Gant Travel applied for a First Draw PPP Loan in the amount of $1,600,800. It reported 96 employees on its First Draw PPP Loan application.

111. An authorized representative of Gant Travel prepared its Form 2483, in which the representative falsely and fraudulently certified that Gant Travel was a small business concern for purposes of participation in the PPP, by failing to acknowledge that it was affiliated with other Affiliated Defendants, and by omitting information concerning its common ownership and/or management and control by Elmore Companies.

112. In conjunction with its application, Gant Travel reported that its business industry was "Travel Agencies" and utilized the NAICS Code 561510.

113. Gant Travel was approved for First Draw PPP Loan number 5868987003 in the amount of $1,600,800 by First Financial Bank on April 6, 2020.

114. On or about February 9, 2021, the loan (plus interest) was forgiven in the total amount of $1,614,001.12, causing the United States to reimburse First Financial Bank for the full amount, which cost the Government at least $1,614,001.12.

***Legacy Fire Protection Services LLC***

115. In or about April 2020, LFPS applied for a First Draw PPP Loan in the amount of $152,500. It reported 12 employees on its First Draw PPP Loan application.

116. An authorized representative of LFPS prepared its Form 2483, in which the representative falsely and fraudulently certified that LFPS was a small business concern for

purposes of participation in the PPP, by failing to acknowledge that it was affiliated with other Affiliated Defendants, and by omitting information regarding common ownership and/or management and control by Elmore Companies.

117. In conjunction with its application, LFPS reported that its business industry was "Plumbing, Heating, and Air-Conditioning Contractors" and utilized the NAICS Code 238220.

118. LFPS was approved for First Draw PPP Loan number 7866347005 in the amount of $152,500 by Centier Bank on April 8, 2020.

119. On or about February 10, 2021, the loan (plus interest) was forgiven in the total amount of $153,724.18, causing the United States to reimburse Centier Bank for the full amount, which cost the Government at least $153,724.18.

***Shelby Equipment, Inc.***

120. In or about April 2020, Shelby Equipment applied for a First Draw PPP Loan in the amount of $23,900. It reported one employee on its First Draw PPP Loan application.

121. An authorized representative of Shelby Equipment prepared its Form 2483, in which the representative falsely and fraudulently certified that Shelby Equipment was a small business concern for purposes of participation in the PPP, by failing to acknowledge that it was affiliated with other Affiliated Defendants, and by omitting information regarding common ownership and/or management and control by Elmore Companies.

122. In conjunction with its application, Shelby Equipment reported that its business industry was "Industrial Machinery and Equipment Merchant Wholesalers" and utilized the NAICS Code 423830.

123. Shelby Equipment was approved for First Draw PPP Loan number 5942777009 in the amount of $23,900 by First Financial Bank on April 6, 2020.

124. On or about June 11, 2021, the loan (plus interest) was forgiven in the total amount of $24,177, causing the United States to reimburse First Financial Bank for the full amount, which cost the Government at least $24,177.

***Solution Tree, Inc.***

125. In or about April 2020, Solution Tree applied for a First Draw PPP Loan in the amount of $3,361,000. It reported 221 employees on its First Draw PPP Loan application.

126. An authorized representative of Solution Tree prepared its Form 2483, in which the representative falsely and fraudulently certified that Solution Tree was a small business concern for purposes of participation in the PPP, by failing to acknowledge that it was affiliated with other Affiliated Defendants, and by omitting information regarding common ownership and/or management and control by Elmore Companies.

127. In conjunction with its application, Solution Tree reported that its business industry was "Elementary and Secondary Schools" and utilized the NAICS Code 611110.

128. Solution Tree was approved for First Draw PPP Loan number 5897667000 in the amount of $3,361,000 by First Financial Bank on April 6, 2020.

129. On or about September 10, 2021, the loan (plus interest) was forgiven in the total amount of $3,408,606.49, causing the United States to reimburse First Financial Bank for the full amount, which cost the Government at least $3,408,606.49.

***Turner Mining Group, LLC***

130. In or about April 2020, Turner Mining applied for a First Draw PPP Loan in the amount of $2,975,000. It reported 167 employees on its First Draw PPP Loan application.

131. An authorized representative of Turner Mining prepared its Form 2483, in which the representative falsely and fraudulently certified that Turner Mining was a small business

concern for purposes of participation in the PPP, by failing to acknowledge that it was affiliated with other Affiliated Defendants, and by omitting information regarding common ownership and/or management and control by Elmore Companies.

132. In conjunction with its application, Turner Mining reported that its business industry was "Support Activities for Nonmetallic Minerals (except Fuels) Mining" and utilized the NAICS Code 213115.

133. Turner Mining was approved for First Draw PPP Loan number 5216447010 in the amount of $2,975,000 by German American Bank on April 5, 2020.

134. On or about June 11, 2021, the loan (plus interest) was forgiven in the total amount of $3,009,314.38, causing the United States to reimburse German American Bank for the full amount, which cost the Government at least $3,009,314.38.

* * *

135. As set forth in Table A, Affiliated Defendants reported a total of 878 employees on their First Draw PPP Loans and applied for and received loans in the total amount of $12,614,100. Those loans were forgiven in the total amount, including interest, of $12,758,778.16. As a result of Affiliated Defendants' First Draw PPP Loans, the Government reimbursed lenders a total amount of $12,758,778.16.

**Table A**

| Entity | Loan Amount | Amount Forgiven | Lender | NAICS Code | Jobs Reported |
|---|---|---|---|---|---|
| Adams & Westlake Ltd. | $292,900 | $296,302.45 | Centier Bank | 332999 | 28 |
| Ameriforce Media, LLC | $59,300 | $59,995 | First Financial Bank | 541840 | 4 |
| Bellwether Forest Products LLC | $519,100 | $525,713.19 | First Financial Bank | 113210 | 42 |
| Butterfield Foods, LLC | $919,400 | $930,130.53 | First Financial Bank | 311999 | 151 |

| | | | | | |
|---|---|---|---|---|---|
| CardDawg, LLC f/k/a CardDawg Management LLC | $112,400 | $113,823 | First Financial Bank | 541620 | 5 |
| Colorado Springs Baseball Club LLC d/b/a Rocky Mountain Vibes | $359,900 | $364,051 | First Financial Bank | 711211 | 31 |
| Cornerstone Information Systems, Inc. | $1,666,400 | $1,680,096.44 | First Financial Bank | 541511 | 88 |
| Firmatek, LLC | $571,500 | $578,843.38 | First Financial Bank | 334513 | 32 |
| Gant Travel Ltd. | $1,600,800 | $1,614,001.12, | First Financial Bank | 561510 | 96 |
| Legacy Fire Protection Services LLC | $152,500 | $153,724.18 | Centier Bank | 238220 | 12 |
| Shelby Equipment, Inc. | $23,900 | $24,177 | First Financial Bank | 423830 | 1 |
| Solution Tree, Inc | $3,361,000 | $3,408,606.49 | First Financial Bank | 611110 | 221 |
| Turner Mining Group, LLC | $2,975,000 | $3,009,314.38 | German American Bank | 213115 | 167 |
| **Total** | **$12,614,100.00** | **$12,758,778.16** | - | - | **878** |

**B. Affiliated Defendants' Second Draw PPP Loans**

***Adams & Westlake Ltd.***

136. In or about February 2021, Adams & Westlake applied for a Second Draw PPP Loan in the amount of $272,917.50. It reported 25 employees on its Second Draw PPP Loan application.

137. An authorized representative of Adams & Westlake prepared its Form 2483-SD, in which the representative falsely and fraudulently certified that Adams & Westlake was a small business concern for purposes of participation in the PPP, by failing to acknowledge that it was affiliated with other Affiliated Defendants, and by omitting information regarding common ownership and/or management and control by Elmore Companies.

138. In conjunction with its application, Adams & Westlake reported that its business industry was "All Other Miscellaneous Fabricated Metal Product Manufacturing" and utilized the NAICS Code 332999.

139. Adams & Westlake was approved for Second Draw PPP Loan number 9730318406 in the amount of $272,917.50 by Centier Bank on February 17, 2021.

140. On or about August 10, 2021, the loan (plus interest) was forgiven in the total amount of $274,173.67, causing the United States to reimburse Centier Bank for the full amount, which cost the Government at least $274,173.67.

***Ameriforce Media***

141. In or about February 2021, Ameriforce applied for a Second Draw PPP Loan in the amount of $58,500. It reported 81 employees on its Second Draw PPP Loan application, an increase of 77 employees from its reported total in April 2020.

142. An authorized representative of Ameriforce prepared its Form 2483-SD, in which the representative falsely and fraudulently certified that Ameriforce was a small business concern for purposes of participation in the PPP, by failing to acknowledge that it was affiliated with other Affiliated Defendants, and by omitting information regarding common ownership and/or management and control by Elmore Companies.

143. In conjunction with its application, Ameriforce reported that its business industry was "Media Representatives" and utilized the NAICS Code 541840.

144. Ameriforce was approved for Second Draw PPP Loan number 1652948807 in the amount of $58,500 by First Financial Bank on April 10, 2021.

145. On or about October 25, 2021, the loan (plus interest) was forgiven in the total amount of $58,809, causing the United States to reimburse First Financial Bank for the full amount, which cost the Government at least $58,809.

***Bellwether Forest Products LLC***

146. In or about February 2021, Bellwether Forest applied for a Second Draw PPP Loan in the amount of $494,600. It reported 229 employees on its Second Draw PPP Loan application, an increase of 187 employees from its reported total in April 2020.

147. An authorized representative of Bellwether Forest prepared its Form 2483-SD, in which the representative falsely and fraudulently certified that Bellwether Forest was a small business concern for purposes of participation in the PPP, by failing to acknowledge that it was affiliated with other Affiliated Defendants, and by omitting information concerning its common ownership and/or management and control by Elmore Companies.

148. In conjunction with its application, Bellwether Forest reported that its business industry was "Logging" and utilized the NAICS Code 113310.

149. Bellwether Forest was approved for Second Draw PPP Loan number 5680188407 in the amount of $494,600 by First Financial Bank on February 9, 2021.

150. On or about September 22, 2021, the loan (plus interest) was forgiven in the total amount of $497,677.51, causing the United States to reimburse First Financial Bank for the full amount, which cost the Government at least $497,677.51.

***Colorado Springs Baseball Club LLC d/b/a Rocky Mountain Vibes***

151. In or about January 2021, Rocky Mountain Vibes applied for a Second Draw PPP Loan in the amount of $359,900. It reported 52 employees on its Second Draw PPP Loan application, an increase of 21 employees from its reported total in April 2020.

152. An authorized representative of Rocky Mountain Vibes prepared its Form 2483-SD, in which the representative falsely and fraudulently certified that Rocky Mountain Vibes was a small business concern for purposes of participation in the PPP, by failing to acknowledge that it was affiliated with other Affiliated Defendants, and by omitting information concerning its common ownership and/or management and control by Elmore Companies.

153. In conjunction with its application, Rocky Mountain Vibes reported that its business industry was "Sports Teams and Clubs" and utilized the NAICS Code 711211.

154. Rocky Mountain Vibes was approved for Second Draw PPP Loan number 5262748308 in the amount of $359,900 by First Financial Bank on January 25, 2021.

155. On or about October 26, 2021, the loan (plus interest) was forgiven in the total amount of $362,572, causing the United States to reimburse First Financial Bank for the full amount, which cost the Government at least $362,572.

***Cornerstone Information Systems, Inc.***

156. In or about February 2021, CIS applied for a Second Draw PPP Loan in the amount of $1,666,400. It reported 75 employees on its Second Draw PPP Loan application.

157. An authorized representative of CIS prepared its Form 2483-SD, in which the representative falsely and fraudulently certified that CIS was a small business concern for purposes of participation in the PPP, by failing to acknowledge that it was affiliated with other Affiliated Defendants, and by omitting information concerning its common ownership and/or management and control by Elmore Companies.

158. In conjunction with its application, CIS reported that its business industry was "Custom Computer Programming Services" and utilized the NAICS Code 541511.

159. CIS was approved for Second Draw PPP Loan number 1616238406 in the amount of $1,666,400 by First Financial Bank on February 2, 2021.

160. On or about September 20, 2021, the loan (plus interest) was forgiven in the total amount of $1,676,717.98, causing the United States to reimburse First Financial Bank for the full amount, which cost the Government at least $1,676,717.98.

***Firmatek, LLC***

161. In or about February 2021, Firmatek applied for a Second Draw PPP Loan in the amount of $532,500. It reported 229 employees on its Second Draw PPP Loan application, 197 more than it reported in April 2020.

162. An authorized representative of Firmatek prepared its Form 2483-SD, in which the representative falsely and fraudulently certified that Firmatek was a small business concern for purposes of participation in the PPP, by failing to acknowledge that it was affiliated with other Affiliated Defendants, and by omitting information concerning its common ownership and/or management and control by Elmore Companies.

163. In conjunction with its application, Firmatek reported that its business industry was "Geophysical Surveying and Mapping Services" and utilized the NAICS Code 541360.

164. Firmatek was approved for Second Draw PPP Loan number 3076498400 in the amount of $532,500 by First Financial Bank on February 4, 2021.

165. On or about June 1, 2022, the loan (plus interest) was forgiven in the total amount of $539,555.62, causing the United States to reimburse First Financial Bank for the full amount, which cost the Government at least $539,555.62.

***Gant Travel Ltd.***

166. In or about February 2021, Gant Travel applied for a Second Draw PPP Loan in the amount of $1,601,400. It reported 96 employees on its Second Draw PPP Loan application.

167. An authorized representative of Gant Travel prepared its Form 2483-SD, in which the representative falsely and fraudulently certified that Gant Travel was a small business concern for purposes of participation in the PPP, by failing to acknowledge that it was affiliated with other Affiliated Defendants, and by omitting information concerning its common ownership and/or management and control by Elmore Companies.

168. In conjunction with its application, Gant Travel reported that its business industry was "Travel Agencies" and utilized the NAICS Code 561510.

169. Gant Travel was approved for Second Draw PPP Loan number 3112438402 in the amount of $1,601,400 by First Financial Bank on February 4, 2021.

170. On or about September 14, 2021, the loan (plus interest) was forgiven in the total amount of $1,611,008.40, causing the United States to reimburse First Financial Bank for the full amount, which cost the Government at least $1,611,008.40.

***Legacy Fire Protection Services LLC***

171. In or about February 2021, LFPS applied for a Second Draw PPP Loan in the amount of $169,665. It reported 15 employees on its Second Draw PPP Loan application.

172. An authorized representative of LFPS prepared its Form 2483-SD, in which the representative falsely and fraudulently certified that LFPS was a small business concern for purposes of participation in the PPP, by failing to acknowledge that it was affiliated with other Affiliated Defendants, and by omitting information regarding common ownership and/or management and control by Elmore Companies.

173. In conjunction with its application, LFPS reported that its business industry was "Plumbing, Heating, and Air-Conditioning Contractors" and utilized the NAICS Code 238220.

174. LFPS was approved for Second Draw PPP Loan number 4308508406 in the amount of $169,665 by Centier Bank on February 6, 2021.

175. On or about August 10, 2021, the loan (plus interest) was forgiven in the total amount of $170,511, causing the United States to reimburse Centier Bank for the full amount, which cost the Government at least $170,511.

***Shelby Equipment, Inc.***

176. In or about February 2021, Shelby Equipment applied for a Second Draw PPP Loan in the amount of $23,900. It reported 36 employees on its Second Draw PPP Loan application, 35 more employees than it reported in April 2020.

177. An authorized representative of Shelby Equipment prepared its Form 2483-SD, in which the representative falsely and fraudulently certified that Shelby Equipment was a small business concern for purposes of participation in the PPP, by failing to acknowledge that it was affiliated with other Affiliated Defendants, and by omitting information regarding common ownership and/or management and control by Elmore Companies.

178. In conjunction with its application, Shelby Equipment reported that its business industry was "Industrial Machinery and Equipment Merchant Wholesalers" and utilized the NAICS Code 423830.

179. Shelby Equipment was approved for Second Draw PPP Loan number 5620798509 in the amount of $23,900 by First Financial Bank on March 1, 2021.

180. On or about October 25, 2021, the loan (plus interest) was forgiven in the total amount of $24,053, causing the United States to reimburse First Financial Bank for the full amount, which cost the Government at least $24,053.

***Solution Tree, Inc.***

181. In or about February 2021, Solution Tree applied for a Second Draw PPP Loan in the amount of $2,000,000. It reported 215 employees on its Second Draw PPP Loan application.

182. An authorized representative of Solution Tree prepared its Form 2483-SD, in which the representative falsely and fraudulently certified that Solution Tree was a small business concern for purposes of participation in the PPP, by failing to acknowledge that it was affiliated with other Affiliated Defendants, and by omitting information regarding common ownership and/or management and control by Elmore Companies.

183. In conjunction with its application, Solution Tree reported that its business industry was "Educational Support Services" and utilized the NAICS Code 611710.

184. Solution Tree was approved for Second Draw PPP Loan number 2427008402 in the amount of $2,000,000 by First Financial Bank on February 3, 2021.

185. On or about October 14, 2021, the loan (plus interest) was forgiven in the total amount of $2,013,095.89, causing the United States to reimburse First Financial Bank for the full amount, which cost the Government at least $2,013,095.89.

***Turner Mining Group, LLC***

186. In or about February 2021, Turner Mining applied for a Second Draw PPP Loan in the amount of $2,000,000. It reported 229 employees on its Second Draw PPP Loan application, 62 more employees than it reported in April 2020.

187. An authorized representative of Turner Mining prepared its Form 2483-SD, in which the representative falsely and fraudulently certified that Turner Mining was a small business concern for purposes of participation in the PPP, by failing to acknowledge that it was affiliated with other Affiliated Defendants, and by omitting information regarding common ownership and/or management and control by Elmore Companies.

188. In conjunction with its application, Turner Mining reported that its business industry was "Support Activities for Nonmetallic Minerals (except Fuels) Mining" and utilized the NAICS Code 213115.

189. Turner Mining was approved for Second Draw PPP Loan number 149188503 in the amount of $2,000,000 by German American Bank on February 19, 2021.

190. On or about December 17, 2021, the loan (plus interest) was forgiven in the total amount of $2,016,164.38, causing the United States to reimburse German American Bank for the full amount, which cost the Government at least $2,016,164.38.

* * *

191. As set forth in Table B, Defendants Adams & Westlake, Ameriforce, Bellwether Forest, CIS, Firmatek, Gant Travel, LFPS, Rocky Mountain Vibes, Shelby Equipment, Solution Tree, and Turner Mining reported a total of 1,282 employees on their Second Draw PPP Loans and applied for and received loans in the total amount of $9,179,782.50. Those loans were forgiven in the total amount, including interest, of $9,244,338.45. As a result of Affiliated Defendants' Second Draw PPP Loans, the Government reimbursed lenders a total amount of $9,244,338.45.

**Table B**

| Entity | Loan Amount | Amount Forgiven | Lender | NAICS Code | Jobs Reported |
|---|---|---|---|---|---|
| Adams & Westlake Ltd. | $272,917.50 | $274,173.67 | Centier Bank | 332999 | 25 |
| Ameriforce Media, LLC | $58,500 | $58,809 | First Financial Bank | 541840 | 81 |
| Bellwether Forest Products LLC | $494,600 | $497,677.51 | First Financial Bank | 113310 | 229 |
| Colorado Springs Baseball Club LLC d/b/a Rocky Mountain Vibes | $359,900 | $362,572 | First Financial Bank | 711211 | 52 |
| Cornerstone Information Systems, Inc. | $1,666,400 | $1,676,717.98 | First Financial Bank | 541511 | 75 |
| Firmatek, LLC | $532,500 | $539,555.62 | First Financial Bank | 541360 | 229 |
| Gant Travel Ltd. | $1,601,400 | $1,611,008.40 | First Financial Bank | 561510 | 96 |
| Legacy Fire Protection Services LLC | $169,665 | $170,511 | Centier Bank | 238220 | 15 |
| Shelby Equipment, Inc. | $23,900 | $24,053 | First Financial Bank | 423830 | 36 |
| Solution Tree, Inc. | $2,000,000 | $2,013,095.89 | First Financial Bank | 611710 | 215 |
| Turner Mining Group, LLC | $2,000,000 | $2,016,164.38 | German American Bank | 213115 | 229 |
| **Total** | **$9,179,782.50** | **$9,244,338.45** | - | - | **1282** |

## INELIGIBILITY UNDER AFFILIATION RULES

192. Affiliated Defendants were not eligible for the First Draw PPP Loans and Second Draw PPP Loans that they received because, under the PPP affiliation rules, their employee counts exceeded 500 employees and 300 employees, respectively.

### A. The Affiliation Rules

193. When multiple entities are operated under common ownership or management, the SBA generally applies "affiliation rules" that require the various entities to consolidate their employee and revenue count when evaluating their loan eligibility.

194. Concerns and entities are affiliates of each other when one controls or has the power to control the other, or a third party or parties control or have the power to control both. It does not matter whether control is exercised, so long as the power to control exists.

195. The "affiliation based on ownership" test states that:

> For determining affiliation based on equity ownership, a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50 percent of the concern's voting equity. If no individual, concern, or entity is found to control, SBA will deem the Board of Directors or President or Chief Executive Officer (CEO) (or other officers, managing members, or partners who control the management of the concern) to be in control of the concern.

U.S. Department of the Treasury, *Affiliation Rules Applicable to U.S. SBA Paycheck Protection Program*, https://home.treasury.gov/system/files/136/Affiliation%20rules%20 overview%20%28for%20public%29.pdf (Apr. 3, 2020) ("Affiliation Rules").

196. The "affiliation based on management" test states that:

> Affiliation arises where the CEO or President of the applicant concern (or other officers, managing members, or partners who control the management of the concern) also controls the management of one or more other concerns. Affiliation also arises where a single individual, concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one of [sic] more other concerns. Affiliation also arises where a single individual, concern or entity controls the management of the applicant concern through a management agreement.

*Id.* at 2.

197. Affiliated Defendants were managed, controlled, and/or owned by Defendant Elmore Companies and Individual Defendants.

### B. Affiliation Rule Waiver Requirements

198. To avoid application of the affiliation rules, Defendants would have to meet one of three affiliation rule waiver requirements.

199. The affiliation rules are waived under the PPP for any of the following three reasons: (1) any business concern with less than 500 employees that, as of the date on which the loan is funded, is assigned a NAICS Code beginning with the digits 72; (2) any business concern operating as a franchise that is assigned a franchise identifier code by the U.S. SBA; and (3) any business concern that "receives financial assistance from a company licensed under section 301 of the Small Business Investment Act of 1958," *i.e.*, a "small business investment company [("SBIC")]." Affiliation Rules, at 2. "Financial assistance" includes any type of financing listed in 13 C.F.R. § 107.50, including loans and equity.

200. These waivers to the affiliation rules do not apply: none of Affiliated Defendants was assigned a NAICS Code beginning with 72, nor have any of these entities been assigned a franchise identifier code. Upon information and belief, Affiliated Defendants have not received SBIC lending.

### C. Application of the Affiliation Rules

201. Eligibility under the First Draw PPP Loan program is limited to companies with 500 employees or fewer across all affiliates, unless they qualify as small business concerns under the SBA's alternative size standards, and eligibility under the Second Draw PPP Loan program is limited to companies with 300 employees or fewer across all affiliates.

202. At all relevant times, Defendants Bellwether Forest, Butterfield Foods, CardDawg, CIS, Firmatek, Gant Travel, Solution Tree, and Turner Mining sponsored Employee Benefit Plans named: Bellwether Forest Products 401(k) Plan (the "Bellwether Forest Plan"); Butterfield Foods, LLC 401(k) Plan (the "Butterfield Foods Plan"); CardDawg 401(k) Plan (the

"CardDawg Plan"); Cornerstone Information Systems, Inc. 401(k) Plan (the "CIS Plan"); Firmatek LLC/The Elmore Companies Health and Welfare Plan (the "Firmatek Plan"); Gant Travel, Ltd. 401(k) Profit Sharing Plan (the "Gant Travel Plan"); Solution Tree, Inc. 401(k) Profit Sharing Plan (the "Solution Tree Plan"); and Turner Mining Group 401(k) Plan (the "Turner Mining Plan") (collectively, the "Plans").

203. The Bellwether Forest Plan's 2019 Form 5500, which covers the period of January 1, 2019, to December 31, 2019, lists the sponsor as Bellwether Forest Products, LLC and identifies the Bellwether Forest Plan as "a single-employer plan." The Bellwether Forest Plan had 37 active participants at the beginning of the plan year (January 1, 2019), and 35 active participants at the end of the plan year (December 31, 2019).

204. The Bellwether Forest Plan's 2020 Form 5500, which covers the period of January 1, 2020, to December 31, 2020, lists the sponsor as Bellwether Forest Products, LLC and identifies the Bellwether Forest Plan as "a single-employer plan." The Bellwether Forest Plan had 35 active participants at the beginning of the plan year (January 1, 2020), and 31 active participants at the end of the plan year (December 31, 2020).

205. The Bellwether Forest Plan's 2021 Form 5500, which covers the period of January 1, 2021, to December 31, 2021, lists the sponsor as Bellwether Forest Products, LLC and identifies the Bellwether Forest Plan as "a single-employer plan." The Bellwether Forest Plan had 31 active participants at the beginning of the plan year (January 1, 2021), and 50 active participants at the end of the plan year (December 31, 2021).

206. The Butterfield Foods Plan's 2019 Form 5500, which covers the period of January 1, 2019, to December 31, 2019, lists the sponsor as Butterfield Foods, LLC and identifies the Butterfield Foods Plan as "a single-employer plan." The Butterfield Foods Plan had 96 active

participants at the beginning of the plan year (January 1, 2019), and 88 active participants at the end of the plan year (December 31, 2019).

207. The Butterfield Foods Plan's 2020 Form 5500, which covers the period of January 1, 2020, to December 31, 2020, lists the sponsor as Butterfiled Foods LLC [sic] and identifies the Butterfield Foods Plan as "a single-employer plan." The Butterfield Foods Plan had 88 active participants at the beginning of the plan year (January 1, 2020), and 105 active participants at the end of the plan year (December 31, 2020).

208. The Butterfield Foods Plan's 2021 Form 5500, which covers the period of January 1, 2021, to December 31, 2021, lists the sponsor as Butterfield Foods, LLC and identifies the Butterfield Foods Plan as "a single-employer plan." The Butterfield Foods Plan had 105 active participants at the beginning of the plan year (January 1, 2021), and 117 active participants at the end of the plan year (December 31, 2021).

209. The CardDawg Plan's 2019 Form 5500, which covers the period of January 1, 2019, to December 31, 2019, lists the sponsor as CardDawg, LLC and identifies the CardDawg Plan as "a single-employer plan." The CardDawg Plan had 5 active participants at the beginning of the plan year (January 1, 2019), and 7 active participants at the end of the plan year (December 31, 2019).

210. The CardDawg Plan's 2020 Form 5500, which covers the period of January 1, 2020, to December 31, 2020, lists the sponsor as CardDawg, LLC and identifies the CardDawg Plan as "a single-employer plan." The CardDawg Plan had 7 active participants at the beginning of the plan year (January 1, 2020), and 6 active participants at the end of the plan year (December 31, 2020).

211. The CardDawg Plan's 2021 Form 5500, which covers the period of January 1, 2021, to December 31, 2021, lists the sponsor as CardDawg, LLC and identifies the CardDawg Plan as "a single-employer plan." The CardDawg Plan had 6 active participants at the beginning of the plan year (January 1, 2021), and 5 active participants at the end of the plan year (December 31, 2021).

212. The CIS Plan's 2019 Form 5500, which covers the period of January 1, 2019, to December 31, 2019, lists the sponsor as Cornerstone Information Systems Inc and identifies the CIS Plan as "a single-employer plan." The CIS Plan had 42 active participants at the beginning of the plan year (January 1, 2019), and 41 active participants at the end of the plan year (December 31, 2019).

213. The CIS Plan's 2020 Form 5500, which covers the period of January 1, 2020, to December 31, 2020, lists the sponsor as Cornerstone Information Systems Inc and identifies the CIS Plan as "a single-employer plan." The CIS Plan had 42 active participants at the beginning of the plan year (January 1, 2020), and 42 active participants at the end of the plan year (December 31, 2020).

214. The CIS Plan's 2021 Form 5500, which covers the period of January 1, 2021, to December 31, 2021, lists the sponsor as Cornerstone Information Systems Inc and identifies the CIS Plan as "a single-employer plan." The CIS Plan had 44 active participants at the beginning of the plan year (January 1, 2021), and 42 active participants at the end of the plan year (December 31, 2021).

215. The Firmatek Plan's 2019 Form 5500, which covers the period of January 1, 2019, to December 31, 2019, was filed in April 2026 and is signed by Lauren Elmore as the plan administrator. It lists the sponsor as Firmatek LLC and identifies the Firmatek Plan as "a single-

employer plan." The Firmatek Plan had 134 active participants at the beginning of the plan year (January 1, 2019), and 243 active participants at the end of the plan year (December 31, 2019).

216. The Firmatek Plan's 2020 Form 5500, which covers the period of January 1, 2020, to December 31, 2020, was filed in April 2026 and is signed by Lauren Elmore as the plan administrator. It lists the sponsor as Firmatek LLC and identifies the Firmatek Plan as "a single-employer plan." The Firmatek Plan had 243 active participants at the beginning of the plan year (January 1, 2020), and 140 active participants at the end of the plan year (December 31, 2020).

217. The Firmatek Plan's 2021 Form 5500, which covers the period of January 1, 2021, to December 31, 2021, was filed in April 2026 and is signed by Lauren Elmore as the plan administrator. It lists the sponsor as Firmatek LLC and identifies the Firmatek Plan as "a single-employer plan." The Firmatek Plan had 140 active participants at the beginning of the plan year (January 1, 2021), and 210 active participants at the end of the plan year (December 31, 2021).

218. The Gant Travel Plan's 2019 Form 5500, which covers the period of January 1, 2019, to December 31, 2019, lists the sponsor as Gant Travel, Ltd. and identifies the Gant Travel Plan as "a single-employer plan." The Gant Travel Plan had 109 active participants at the beginning of the plan year (January 1, 2019), and 121 active participants at the end of the plan year (December 31, 2019).

219. The Gant Travel Plan's 2020 Form 5500, which covers the period of January 1, 2020, to December 31, 2020, lists the sponsor as Gant Travel, Ltd. and identifies the Gant Travel Plan as "a single-employer plan." The Gant Travel Plan had 129 active participants at the beginning of the plan year (January 1, 2020), and 120 active participants at the end of the plan year (December 31, 2020).

220. The Solution Tree's 2019 Form 5500, which covers the period of January 1, 2019, to December 31, 2019, lists the sponsor as Solution Tree, Inc. and identifies the Solution Tree Plan as "a single-employer plan." The Solution Tree Plan had 212 active participants at the beginning of the plan year (January 1, 2019), and 199 active participants at the end of the plan year (December 31, 2019).

221. The Solution Tree's 2020 Form 5500, which covers the period of January 1, 2020, to December 31, 2020, lists the sponsor as Solution Tree, Inc. and identifies the Solution Tree Plan as "a single-employer plan." The Solution Tree Plan had 211 active participants at the beginning of the plan year (January 1, 2020), and 184 active participants at the end of the plan year (December 31, 2020).

222. The Turner Mining Plan's 2019 Form 5500, which covers the period of January 1, 2019, to December 31, 2019, lists the sponsor as Turner Mining Group, LLC and identifies the Turner Mining Plan as "a single-employer plan." The Turner Mining Plan had 29 active participants at the beginning of the plan year (January 1, 2019), and 118 active participants at the end of the plan year (December 31, 2019).

223. The Turner Mining Plan's 2020 Form 5500, which covers the period of January 1, 2020, to December 31, 2020, lists the sponsor as Turner Mining Group, LLC and identifies the Turner Mining Plan as "a single-employer plan." The Turner Mining Plan had 118 active participants at the beginning of the plan year (January 1, 2020), and 90 active participants at the end of the plan year (December 31, 2020).

224. The Turner Mining Plan's 2021 Form 5500, which covers the period of January 1, 2021, to December 31, 2021, lists the sponsor as Turner Mining Group, LLC and identifies the Turner Mining Plan as "a single-employer plan." The Turner Mining Plan had 90 active

participants at the beginning of the plan year (January 1, 2021), and 66 active participants at the end of the plan year (December 31, 2021).

225. "Active participants" are "those individuals who are employed at any time during the year in question and covered by the plan." IRS, *Request for Information Instructions for Question 2 (Letter 1562-Z)*, https://www.irs.gov/pub/irs-tege/partial_term_request_instructions_q2.pdf (Aug. 2012).

226. Defendants Bellwether Forest, Butterfield Foods, CardDawg, CIS, Firmatek, Gant Travel, Solution Tree, and Turner Mining reported a total of 664 active participants as of January 1, 2019, 873 active participants as of January 1, 2020; 718 active participants as of December 31, 2020; and 490 active participants as of December 31, 2021.[24]

227. Affiliated Defendants collectively reported a total of 878 jobs on their First Draw PPP Loan applications, exceeding the relevant size standard.

228. Further, the applicable alternative size standards for each Affiliated Defendant, set forth in Table C, do not qualify Affiliated Defendants as small business concerns.

**Table C**

| Entity | NAICS Code | NAICS Industry Description | Alternative Size Standard-Annual Receipts | Alternative Size Standard-Employees |
|---|---|---|---|---|
| Adams & Westlake, Ltd. | 332999 | All Other Miscellaneous Fabricated Metal Product Manufacturing | N/A | 750 |
| Ameriforce Media, LLC | 541840 | Media Representatives | $16.5 Million | N/A |

[24] None of the active participant totals include employees of Defendants Ameriforce, Rocky Mountain Vibes, or Shelby Equipment and the 2021 totals also do not include employees of Defendants Gant Travel and Solution Tree (whose Form 5500s for 2021 do not list any active participants). Upon information and belief, the active participants were moved to Human Capital Concepts LLC, an entity that provided human resource and benefits services to several Affiliated Defendants.

| | | | | |
|---|---|---|---|---|
| Bellwether Forest Products LLC | 113210 | Forest Nurseries and Gathering of Forest Products | $12 Million | N/A |
| Butterfield Foods, LLC | 311999 | All other Miscellaneous Food Manufacturing | N/A | 500 |
| CardDawg, LLC f/k/a CardDawg Management LLC | 541620 | Environmental Consulting Services | $16.5 Million | N/A |
| Colorado Springs Baseball Club LLC d/b/a Rocky Mountain Vibes | 711211 | Sports Teams and Clubs | $41.5 Million | N/A |
| Cornerstone Information Systems, Inc. | 541511 | Custom Computer Programming Services | $30 Million | N/A |
| Firmatek, LLC | 541360 | Geophysical Surveying and Mapping Services | $16.5 Million | N/A |
| Gant Travel Ltd. | 561510 | Travel Agencies | $22 Million | N/A |
| Legacy Fire Protection Services LLC | 238220 | Plumbing, Heating, and Air-Conditioning Contractors | $16.5 Million | N/A |
| Shelby Equipment, Inc. | 423830 | Industrial Machinery and Equipment Merchant Wholesalers | N/A | 100 |
| Solution Tree, Inc. | 611710 | Educational Support Services | $16.5 Million | N/A |
| Turner Mining Group, LLC | 213115 | Support Activities for Nonmetallic Minerals (except Fuels) | $8 Million | N/A |

229. As set forth herein, at all relevant times, Affiliated Defendants had more than 750 employees and annual receipts that exceeded $41.5 million. Affiliated Defendants did not qualify as small business concerns under the SBA's applicable alternative size standards.

230. Affiliated Defendants collectively reported a total of 1,282 jobs on their Second Draw PPP Loan applications, exceeding the relevant size standard.

### D. Relator's Independent Investigation Has Confirmed That Defendants Were Affiliates

231. Relator has fully corroborated the nature of Defendants' unlawful conduct through an independent investigation of non-public information and adduced additional non-public evidence supporting the allegations regarding the affiliation and relationship of Defendants, including by interviewing former employees of Affiliated Defendants (who are identified as confidential witnesses below), which investigation has confirmed Defendants' affiliated nature under applicable and controlling law.

232. Confidential Witness One ("WITNESS ONE") was employed by Elmore Companies from December 2017 to September 2021; Firmatek from December 2019 to September 2021; and Turner Mining from April 2021 to December 2024.

233. WITNESS ONE started working at Elmore Companies as the executive assistant for Defendants Gant Elmore and Lauren Elmore.

234. WITNESS ONE was, at times, called upon to provide marketing services to three entities which WITNESS ONE understood to be owned and controlled by Gant Elmore and Lauren Elmore: Turner Mining, Firmatek, and Bellwether Forest Products.

235. WITNESS ONE's job responsibilities "bounced between several companies," all of which WITNESS ONE believed were controlled by Gant Elmore and Lauren Elmore.

236. WITNESS ONE was paid by CardDawg, LLC from 2017 until 2022. WITNESS ONE also provided marketing services to CardDawg.

237. According to WITNESS ONE, less than ten people were actual employees of CardDawg (*i.e.*, personnel who received a W-2 from that company). WITNESS ONE was paid by CardDawg as were Gant Elmore, Lauren Elmore, and a few other office staff, as well as the heads of Turner Mining, Firmatek, and Bellwether Forest Products. Other employees of each of

these companies were not paid by Carddawg. Rather, they were on payroll and received W-2s from the companies where they worked.

238. WITNESS ONE said that Lauren Elmore was the President and CEO of Firmatek and she also provided business and consulting services to the other affiliated companies that fell under "the CardDawg umbrella." Gant Elmore acted in a CFO-type capacity for these companies.

239. WITNESS ONE understood Bellwether Forest, Carddawg, Firmatek, and Turner Mining to be part of Elmore Companies, Inc. WITNESS ONE believed the "other Elmore Companies" (*i.e.*, companies that are a part of Elmore Companies, Inc.) were under DG Elmore's control. WITNESS ONE knew there was an ownership connection and/or financial interest between CardDawg and the Elmore family.

240. WITNESS ONE stated that when CardDawg's Director of Finance, Emy Huseby, needed assistance with the financial work, Elmore Companies' CFO, Peter Rumley, sometimes provided her with assistance.

241. WITNESS ONE believed there were about ten employees at CardDawg. WITNESS ONE believed that Turner Mining and Bellwether Forest each had approximately 150 to 200 employees and that there were approximately 40 or 50 employees at Firmatek. Overall, WITNESS ONE believed there to have been a total of between 500 and 1,000 employees at all the entities prior to the COVID-19 pandemic.

242. Confidential Witness Two ("WITNESS TWO") was employed at Adams & Westlake in Elkhart, Indiana from September 2017 to February 2025 as a Sales Administrator.

243. WITNESS TWO worked as the Sales Administrator, but "wore a lot of hats," including handling inventory and various office tasks. WITNESS TWO reported to the Adams & Westlake's president, Mike Rzeszutko ("Rzeszutko"), and was his "right hand."

244. Rzeszutko reported to the Adams & Westlake's CEO, Defendant Randy Schneider. According to WITNESS TWO, Randy Schneider is the CEO of both Adams & Westlake and LFPS.

245. Initially, the two companies shared a warehouse at the Adams & Westlake location until LFPS was "up on its feet" and moved to its own location.

246. The Adams & Westlake accountant, Janet Miller, handles accounting for both Adams & Westlake and LFPS.

247. WITNESS TWO believes that Schneider was paid by Adams & Westlake.

248. WITNESS TWO knew that both Adams & Westlake and LFPS were affiliated with Elmore Companies and owned by DG Elmore. WITNESS TWO knew that there were other companies under the Elmore Companies umbrella, but could not recall their names.

249. WITNESS TWO called the Elmore Companies a "good ol' boys' club" and said that DG Elmore put his friends in place as heads of the various companies. WITNESS TWO described it as a "you scratch my back, I'll scratch yours" kind of relationship and believed there was a lot of "nepotism" and that the relationships seemed "sketchy." WITNESS TWO could not recall the names of the affiliated Elmore Companies but noted there was a travel company owned by Elmore Companies that employees of Adams & Westlake were supposed to use for travel arrangements. Similarly, they were supposed to use an Elmore Companies-affiliated marketing company for Adams & Westlake marketing needs.

250. Additionally, WITNESS TWO recalled that there were certain payments issued to third parties that seemed to be issued by different Elmore Companies-affiliated companies on a rotating basis. For example, there was one charity or scholarship for which Adams & Westlake wrote a check. WITNESS TWO's understanding from Rzeszutko was that it was Adams & Westlake's year to donate to that organization (and the implication was that other Elmore Companies-affiliated entities were also involved in issuing payments to this same charity, on a rotating basis). WITNESS TWO did not know further details, stating that Adams & Westlake's accountant, Janet Miller, handled those details.

251. According to WITNESS TWO, there were a total of about 30 staff working at Adams & Westlake.

252. According to WITNESS TWO, worker evaluations, raises, and other human resources decisions were generally made by Rzeszutko and Randy Schneider, sometimes in consultation with DG Elmore.

253. WITNESS TWO said that Janet Miller managed elements of payroll internally, with the assistance of a third-party company, Human Capital Concepts LLC, that handled all payroll and benefits for Adams & Westlake.

254. Confidential Witness Three ("WITNESS THREE") was employed by Defendant Bellwether Forest as a procurement forester in Columbia and Camden, South Carolina between 2017 and 2021. WITNESS THREE reported directly to Defendant Matt Moldenhauer, Bellwether Forest's President.

255. WITNESS THREE estimated that there were between 40 and 50 employees at Bellwether Forest at the time.

256. When WITNESS THREE was hired, Defendants Gant Elmore and Lauren Elmore had just purchased Bellwether Forest and put Matt Moldenhauer, previously affiliated with Elmore Companies, in place to lead Bellwether Forest.

257. WITNESS THREE described Bellwether Forest as one of many companies owned by the two siblings "under the umbrella" of Elmore Companies, which WITNESS THREE referred to as an "equity investment group" that bought, grew, and sold businesses.

258. WITNESS THREE stated that Matt Moldenhauer ran Bellwether Forest on a day-to-day basis, but recalled that Gant Elmore was active in its operations as well, describing Gant Elmore as the "go-to guy" if Matt Moldenhauer was gone. WITNESS THREE had to call Gant Elmore once or twice with questions. WITNESS THREE recalled that Gant Elmore was the "more active" of the siblings, with Lauren Elmore only attending meetings at Bellwether Forest approximately once per year.

259. WITNESS THREE thought that the relationship between Matt Moldenhauer and Elmore Companies may have changed at some point. While Matt Moldenhauer seemed to be more of a manager for Elmore Companies in the first years that WITNESS THREE worked with him, by 2020 and 2021 Matt Moldenhauer was more of a partner with Elmore Companies.

260. WITNESS THREE knew that there were a number of other companies owned by the Elmore family. WITNESS THREE recalled that there were travel, food service, minor league baseball, and quarry companies. WITNESS THREE recalled that at times Turner Mining drone equipment was either given or loaned to Bellwether Forest.

261. WITNESS THREE was unaware of any financial hardship at the company or decline in revenue in 2020 or 2021. According to WITNESS THREE, "[Bellwether Forest] didn't slow down a lick." WITNESS THREE explained that it was a great business to be in

during the COVID-19 pandemic and there was extremely high demand in the raw materials Bellwether Forest provided to sawmills and paper mills. WITNESS THREE described it as "an all-time high for the timber market."

262. Confidential Witness Four ("WITNESS FOUR") was employed by Defendant Firmatek in its San Antonio, Texas office from March 2018 to June 2020 as the Operations Manager.

263. WITNESS FOUR oversaw the field teams and client relationships and reported directly to Firmatek's COO, Rob Wyssbrod ("Wyssbrod"). Wyssbrod reported to Defendant Lauren Elmore, who owned the company with her brother, Defendant Gant Elmore.

264. Lauren Elmore lived in Colorado and was the primary Elmore family member with involvement in Firmatek. Lauren Elmore visited the San Antonio office about four times per year, but spoke with WITNESS FOUR "all the time." WITNESS FOUR worked together closely with Lauren Elmore on "bigger deals" for Firmatek and they frequently traveled together to trade shows and to visit clients.

265. WITNESS FOUR oversaw approximately twelve employees in the field and five in the office. In total, there were approximately thirty-five employees working at Firmatek.

266. According to WITNESS FOUR, the Elmore family purchased Firmatek for Lauren Elmore and Gant Elmore to run, and WITNESS FOUR referred to them as the "owners" of Firmatek.

267. WITNESS FOUR described Firmatek as "shady people" and described the relationship between Firmatek and Elmore Companies as "weird." WITNESS FOUR felt that there were "muddy financials."

268. The Elmore Companies had an Indiana-based accountant who would periodically visit Firmatek. According to WITNESS FOUR, this accountant worked on Firmatek's payroll, accounts payable, and accounts receivable systems. WITNESS FOUR believed that the accountant also frequently worked with other Elmore Companies entities.

269. WITNESS FOUR stated that one other person (WITNESS ONE) handled marketing for Firmatek and other Elmore Companies entities, including Defendant Turner Mining.

270. There were two Elmore Companies entities with which WITNESS FOUR had routine contact, Defendants Turner Mining and Gant Travel.

271. According to WITNESS FOUR, Turner Mining was started by Gant Elmore and his best friend, Defendant Keaton Turner. WITNESS FOUR believed the headcount at Turner Mining was "hundreds" of employees.

272. When WITNESS FOUR first started at Firmatek, Wyssbrod told WITNESS FOUR that Gant Travel was the company they used to book all their travel.

273. WITNESS FOUR was a W-2 employee of and received a paycheck from Firmatek, but believed that the employee handbook and insurance benefits had the name Elmore Companies on them instead of Firmatek.

274. Confidential Witness Five ("WITNESS FIVE") worked for Defendant LFPS from August 2019 to May 2025. WITNESS FIVE's responsibilities included invoicing and collections, accounts payable, accounts receivable, and customer communications as necessary.

275. WITNESS FIVE reported to Janet Miller ("Miller"), the controller, who reported to Defendant Randy Schneider, LFPS's owner.

276. Because there was no true office location for LFPS, WITNESS FIVE, Miller, and Randy Schneider all worked out of the Adams & Westlake offices in Elkhart, Indiana.

277. WITNESS FIVE estimated that there were approximately 30 people employed by LFPS.

278. According to WITNESS FIVE, although Miller was an Adams & Westlake employee, she handled the accounting for both Adams & Westlake and LFPS.

279. WITNESS FIVE believed that a certain percentage of LFPS is owned by Defendant DG Elmore. WITNESS FIVE also believed this to be a similar arrangement at Adams & Westlake, which WITNESS FIVE believed Randy Schneider also "owned."

280. WITNESS FIVE described DG Elmore as a "mentor" to Randy Schneider and that Randy Schneider was in Bloomington and Indianapolis "a lot." WITNESS FIVE believed this travel was for Randy Schneider to meet with DG Elmore and others at Elmore Companies.

281. According to WITNESS FIVE, there were no significant changes to LFPS's headcount or business during the COVID-19 pandemic.

282. Confidential Witness Six ("WITNESS SIX") worked for Defendant Turner Mining from 2018 to February 2020. WITNESS SIX started as an Operations Manager for the eastern part of the United States and was promoted to Business Development Manager in early 2019, reporting to Turner Mining's president, Defendant Keaton Turner.

283. WITNESS SIX was familiar with the Elmore family. WITNESS SIX and Keaton Turner consulted with Defendant Gant Elmore on Turner Mining's finances, legal issues, and contracts. Keaton Turner handled most of the personnel decisions for Turner Mining, with Gant Elmore assigning with large expenditures and other finance-related issues.

284. As detailed above, each Affiliated Defendant was owned and/or controlled by Defendant Elmore Companies at all pertinent times. Affiliated Defendants also shared identical or similar directors, owners, and officers (Individual Defendants), who were also partners at Defendant Elmore Companies.

## COUNT I
## VIOLATION OF THE FALSE CLAIMS ACT – 31 U.S.C. § 3729(a)(1)(A)

285. Relator hereby incorporates and re-alleges herein all other paragraphs as if fully set forth herein.

286. This count is a claim by Relator, on behalf of the United States, for treble damages and penalties under the FCA, 31 U.S.C. § 3729, *et seq.*, against Defendants, for knowingly presenting, or causing to be presented, false or fraudulent claims for payment or approval, in violation of 31 U.S.C. § 3729(a)(1)(A).

287. Through the acts described above, Defendants and their agents and employees knowingly presented and caused to be presented to the Government materially false or fraudulent claims for PPP loans for the receipt of Government funds.

288. The Government, unaware of the material falsity of the claims presented or caused to be presented by Defendants, approved, paid, and participated in payments made by the Government's fiscal intermediaries for PPP loans that it otherwise would not have paid.

289. By reason of these payments and approvals, the Government has been damaged and continues to be damaged.

## COUNT II
## VIOLATION OF THE FALSE CLAIMS ACT – 31 U.S.C. § 3729(a)(1)(B)

290. Relator hereby incorporates and re-alleges herein all other paragraphs as if fully set forth herein.

291. This count is a claim by Relator, on behalf of the United States, for treble damages and penalties under the FCA, 31 U.S.C. § 3729, *et seq*., against Defendants, for knowingly making, using, or causing to be made or used, false records or statements material to the false or fraudulent claims, in violation of 31 U.S.C. § 3729(a)(1)(B).

292. At all times material to this Complaint, and as set forth above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of 31 U.S.C. § 3729(a)(1)(B).

293. Due to Defendants' conduct, the United States Government has suffered substantial monetary damages and is entitled to recover treble damages and a civil penalty for each false claim.

**COUNT III**
**VIOLATION OF THE FALSE CLAIMS ACT - 31 U.S.C. § 3729(a)(1)(C)**

294. Relator hereby incorporates and re-alleges herein all other paragraphs as if fully set forth herein.

295. By virtue of the conduct described above, Defendants conspired with each other to knowingly commit violations of 31 U.S.C. § 3729(a)(1)(A), 31 U.S.C. § 3729(a)(1)(B) and/or 31 U.S.C. § 3729(a)(1)(G) in violation of 31 U.S.C. § 3729(a)(1)(C).

296. Due to Defendants' conduct, the United States Government has suffered substantial monetary damages and is entitled to recover treble damages and a civil penalty for each false claim.

**COUNT IV**
**VIOLATION OF THE FALSE CLAIMS ACT - 31 U.S.C. § 3729(a)(1)(G)**

297. Relator hereby incorporates and re-alleges herein all other paragraphs as if fully set forth herein.

298. Defendants knowingly concealed, or knowingly and improperly avoided or decreased, an obligation to pay or transmit money to the United States, in violation of 31 U.S.C. § 3729(a)(1)(G).

299. By reason of these payments and approvals, the Government has been damaged and continues to be damaged.

**PRAYER FOR RELIEF**

WHEREFORE, Relator prays for judgment against Defendants:

a) awarding the United States treble damages sustained by it for each of the false claims or improperly retained payments;

b) awarding the United States a maximum civil penalty for each of the false claims, records, or statements;

c) awarding Relator the maximum share of the proceeds of this action and any alternate remedy or the settlement of any such claim;

d) awarding Relator litigation costs, expenses, and reasonable attorneys' fees pursuant to 31 U.S.C. § 3730(d)(1); and

e) granting such other relief as the Court may deem just and proper.

DATED this 15th day of July, 2026.

Respectfully submitted,

**DELANEY & DELANEY LLC**
Kathleen A. DeLaney (#18604-49)
3646 Washington Blvd.
Indianapolis, IN 46205
Email: kathleen@delaneylaw.net
Telephone: (317) 920-0400

James E. Miller (*pro hac vice* forthcoming)
MILLER SHAH LLP
65 Main Street
Chester, CT 06412
Email: jemiller@millershah.com
Telephone: (866) 540-5505

Nathan C. Zipperian (*pro hac vice* forthcoming)
MILLER SHAH LLP
2103 N. Commerce Parkway
Fort Lauderdale, FL 33326
Email: nczipperian@millershah.com
Telephone: (866) 540-5505

Bruce D. Parke (*pro hac vice* forthcoming)
MILLER SHAH LLP
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
Email: bdparke@millershah.com
Telephone: (866) 540-5505

Jason Marcus (*pro hac vice* forthcoming)
BRACKER & MARCUS LLC
3355 Lenox Rd., Suite 660
Atlanta, GA 30326
Telephone: (770) 988-5035
Email: Jason@FCACounsel.com

***Attorneys for Plaintiff-Relator***

## DEMAND FOR JURY TRIAL

Relator hereby respectfully demands a trial by jury on all issues and counts triable as of right before a jury.

**DELANEY & DELANEY LLC**
/s/ Kathleen A. DeLaney
Kathleen A. DeLaney (#18604-49)
3646 Washington Blvd.
Indianapolis, IN 46205
Email: kathleen@delaneylaw.net

Telephone: (317) 920-0400

James E. Miller (*pro hac vice* forthcoming)
MILLER SHAH LLP
65 Main Street
Chester, CT 06412
Email: jemiller@millershah.com
Telephone: (866) 540-5505

Nathan C. Zipperian (*pro hac vice* forthcoming)
MILLER SHAH LLP
2103 N. Commerce Parkway
Fort Lauderdale, FL 33326
Email: nczipperian@millershah.com
Telephone: (866) 540-5505

Bruce D. Parke (*pro hac vice* forthcoming)
MILLER SHAH LLP
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
Email: bdparke@millershah.com
Telephone: (866) 540-5505

Jason Marcus (*pro hac vice* forthcoming)
BRACKER & MARCUS LLC
3355 Lenox Rd., Suite 660
Atlanta, GA 30326
Telephone: (770) 988-5035
Email: Jason@FCACounsel.com

***Attorneys for Plaintiff-Relator***